SOLO CUP COMPANY *v.* INTERNATIONAL BROTH-
ERHOOD OF PULP, SULPHITE AND PAPER MILL
WORKERS, AFL-CIO, ET AL.

[No. 43, September Term, 1964.]

144

*Decided December 7, 1964.*

The cause was argued before HENDERSON, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*Barry I. Robinson,* with whom were *Robert L. Sullivan, Jr.* and *Sklar & Sullivan* on the brief, for the appellant.

*Edward William Smith,* with whom were *Claude L. Callegary* and *Callegary & Callegary* on the brief, for the appellees.

SYBERT, J., delivered the opinion of the Court.

We are confronted in this case with the question, novel in Maryland, whether or not the State courts have jurisdiction to entertain a common law tort action for damages for injuries sustained as the result of violence in a labor dispute.

The appellant, Solo Cup Company, a Delaware corporation with its principal place of business in Chicago, Illinois, engages in interstate commerce and has a manufacturing plant in Baltimore County, Maryland. Two of the appellees are the International Brotherhood of Pulp, Sulphite and Paper Mill Workers, AFL-CIO, a labor union with one of its offices in Baltimore City, and Local 845, International Brotherhood of Pulp, Sulphite and Paper Mill Workers, AFL-CIO, a Baltimore local of the international union; and the two individual appellees are representatives of the international and the local unions respectively.

On January 12, 1962, Local 845 was certified as the official bargaining representative of certain of the appellant's employees. The appellees state in their brief that the appellant was reluctant to meet with them to discuss a collective bargaining agreement, and that for this reason the International Union filed charges with the Baltimore office of the National Labor Relations Board (NLRB or Board) on October 30, 1962, alleging that Solo Cup had violated section 8(a)(5) and (1) of the National Labor Relations Act (NLRA or Act), and that after a hearing the Board found that Solo had violated the Act by refusing to bargain with the Union in good faith. The Local called a strike of its members employed by Solo Cup on November 1, 1962. On December 13, 1962, Solo Cup filed charges with the NLRB in Baltimore alleging that the appellees were engaged in unfair labor practices under sec. 8 of the NLRA. On April 16, 1963, after hearing, the NLRB found that the appellees were engaged in unfair labor practices and issued a cease and desist order.

Solo Cup filed a common law tort action for damages in the Superior Court of Baltimore City against the appellees on October 22, 1963, alleging substantially the same acts of the appellees and their agents which were the basis for the NLRB's cease and desist order of April 16, 1963. The alleged tortious acts complained of in the declaration may be summarized as direct threats to employees; damage of appellant's property; damage of homes and other property of appellant's employees, including slashing of tires and convertible tops, putting sugar in gas tanks and throwing paint on automobiles; and the "shooting up" of the homes and automobiles of certain of appellant's employees by the use of firearms. According to the appellant, these acts occurred during the period beginning at about the commencement of the strike, November 1, 1962, and ending about December 4, 1962, and were engaged in to injure the appellant's business and to coerce employees of the appellant into joining the strike. The appellant alleged that it paid for the physical damages caused by the above mentioned acts. The declaration claims damages for the physical injuries as well as for economic injury to the appellant's business.

The appellees filed a special plea to the jurisdiction of the court below, claiming that by reason of the National Labor Relations Act and the Taft-Hartley Act the jurisdiction of a state court in an action such as this is precluded under the theory of federal preemption of the field. The court sustained the plea to the jurisdiction and rendered a judgment for costs against Solo Cup, which then entered this appeal.

The narrow question presented is whether a Maryland court has jurisdiction to entertain a common law tort action where certain of the allegedly tortious acts have previously been found by the NLRB to be unfair labor practices under sec. 8 of the National Labor Relations Act. We believe that in the light of certain recent decisions of the United States Supreme Court the question must be answered in the affirmative.

Although each side cites many cases to support its position, we believe that four cases are determinative of the question. The other cases cited by appellees, such as *Garner v. Teamsters Local No. 776,* 346 U. S. 485 (1953), deal either with the question of a State's jurisdiction to grant an injunction in situ-

ations similar to the one before us or with breaches of contract. Therefore we do not believe them to be in point here.

The most significant case for present purposes is *United Workers v. Laburnum Corp.*, 347 U. S. 656 (1954), in which the employer had brought a common law tort action against the union in a Virginia state court to recover both compensatory and punitive damages. The question decided there seems to have been basically the same as the one before us, *i.e.* (p. 657) :

> "* * * whether the Labor Management Relations Act, 1947, has given the National Labor Relations Board such exclusive jurisdiction over the subject matter of a common-law tort action for damages as to preclude an appropriate state court from hearing and determining its issues where such conduct constitutes an unfair labor practice under that Act."

The Supreme Court answered this question in the negative under the facts of the case before it. The conduct complained of involved the intimidation of officers and employees of the corporation and threats of violence to them which caused substantial work stoppages. The employer was seeking damages primarily for loss of profits. It does not appear that any actual physical damages were involved. The following language from the opinion (pp. 663-664) shows the basis for that decision (and for ours here) :

> "* * * Congress has neither provided nor suggested any substitute for the traditional state court procedure for collecting damages for injuries caused by tortious conduct. For us to cut off the injured respondent from this right of recovery will deprive it of its property without recourse or compensation. To do so will, in effect, grant petitioners immunity from liability for their tortious conduct."

The *Laburnum* decision was followed in *Automobile Workers v. Russell*, 356 U. S. 634 (1958). In that case an employee brought a tort action against a union in an Alabama state court. He claimed compensatory and punitive damages. The employee alleged that because of threats of bodily injury and actual prop-

erty damage (to his automobile) he was prevented by the union from crossing a mass picket line and entering his place of employment and thus lost time from work. The Supreme Court upon the authority of *Laburnum* upheld the state court's jurisdiction to award damages even though under the NLRA the employee could at least have recovered back wages.

In the light of these decisions we conclude that the Maryland court has jurisdiction in the case before us. And we suffer no qualms by reason of the later case of *San Diego Bldg. Trades Council v. Garmon,* 359 U. S. 236 (1959). There the Supreme Court held that under the facts before it a California state court lacked jurisdiction to award damages because of the NLRA, but a close analysis of the opinion discloses that the *Laburnum* decision was not overruled, but merely clarified to some extent. The portion of the facts in *Garmon* with which we are concerned here are as follows: an employer sued for damages in a tort action brought in a state court. The conduct of the union which the employer alleged to support its claim for damages was peaceful picketing only. There was no evidence of actual or threatened violence. Although the Supreme Court used somewhat broad language in explaining its decision, it was careful to distinguish its earlier decisions. The following language supports, we feel, our conclusion that the case before us is one properly within the jurisdiction of the court below (pp. 247-248 of 359 U. S.) :

> "It is true that we have allowed the States to grant compensation for the consequences, as defined by the traditional law of torts, of conduct marked by violence and imminent threats to the public order. [Citing *Russell* and *Laburnum*.] * * * State jurisdiction has prevailed in these situations because the compelling state interest, in the scheme of our federalism, in the maintenance of domestic peace is not overridden in the absence of clearly expressed congressional direction. We recognize that the opinion in [*Laburnum*] * * * found support in the fact that the state remedy had no federal counterpart. But that decision was determined, as is demonstrated by the question to which

review was restricted, by the 'type of conduct' involved, i.e., 'intimidation and threats of violence'. In the present case there is no such compelling state interest."

The appellees maintain that *Garmon* precludes the state court from entertaining the suit here because there is no longer any imminent threat to public order. But even if it could be assumed that the effects of the actual disorder do not linger, we do not agree that jurisdiction is thus precluded. The significant point is that, at the time of the acts of violence complained of, there was an imminent threat to, and, indeed, disruption of, public order, and under such circumstances the State is vitally interested. Moreover, the wounds of the victims persist beyond the infliction of the blows. The appellees' theory is novel. They cite no authority for the proposition that an action to recover for injury resulting from a tort, to be maintainable, must be filed during the continuance of the tort. We are loath to believe that the Supreme Court intended this result to flow from *Garmon.* Otherwise *Laburnum,* which was not overruled, would be rendered virtually nugatory. The theory advanced, extended to its logical conclusion, would mean that if violence were discontinued at any stage of the litigation, the suit must perforce be dismissed, only to have the litigious treadmill reactivated or halted at the caprice of those responsible for violence. We do not think the interpretation contended for can reasonably be distilled from the NLRA or the Supreme Court decisions. Application of such a theory would in some cases be tantamount to state condonation of violence during labor disputes.

Any doubt as to our interpretation of the effect of the Supreme Court cases considered by us above is set at rest by the recent case of *Teamsters Union v. Morton,* 377 U. S. 252 (1964), which involved a suit filed by an employer in a federal District Court under sec. 303 of the Labor Management Relations Act and state common law to recover for business losses caused by certain peaceful secondary boycott activities of a union. Although finding them inapplicable to the case before it, the Supreme Court recognized the line of cases holding state law to be applicable in situations where union activities involv-

ing violence were present, stating (at p. 257) that "* * * in cases involving union violence, state law has been permitted to prevail by reason of controlling considerations which are entirely absent in the present case," and citing *Laburnum, Russell* and *Garmon* in support.

Finally, the appellees contend that the *Garmon* decision precludes state jurisdiction where the NLRB has taken jurisdiction, as here. But *Garmon* cannot be read as standing for such a broad rule. The facts alleged in the instant case involve violence, not mere peaceful picketing. *Laburnum* has not been overruled; in fact it has been reaffirmed this year in *Morton,* and we think it is controlling here.

We hold that this suit is within the jurisdiction of the trial court.

> *Judgment reversed and case remanded for further proceedings; appellees to pay the costs.*