420 P.2d 645

COX'S FOOD CENTER, INC., a corporation, Plaintiff, Appellant and Cross-Respondent,

v.

RETAIL CLERKS UNION, LOCAL NO. 1653, Retail Clerks Union, Local No. 1439, Retail Clerks International Association, AFL–CIO, an international union, Manley McDonald, Jack Hamilton and Dannie O'Brien, representatives of Retail Clerks International Association, AFL–CIO, James Potts, Marvin Averill and John Doe, Pickets, and any other pickets whose names are unknown, Defendants, Respondents and Cross-Appellants.

No. 9622.

Supreme Court of Idaho.
Nov. 25, 1966.
Rehearing Denied Dec. 15, 1966.

Weston & Weston, Boise, for appellant.

Brauner & Fuller, Caldwell, Bassett, Donaldson & Hafer, Seattle, Wash., for respondents.

SMITH, Justice.

Appellant and cross-respondent is herein sometimes referred to as appellant or the store, and respondents and cross-appellants sometimes as respondents or the union.

This appeal is designed to test the correctness of the district court's order dissolving a temporary injunction enjoining respondents from picketing appellant's place of business; and of an order dismissing appellant's action seeking injunctive relief, and general and punitive damages.

Respondents' cross-appeal is designed to test the correctness of the trial court's order denying to respondents an award of damages in the nature of attorney's fees and expenses upon dissolution of the temporary injunction.

Appellant is a corporation, owned by the Jack Cox family, and the corporation's store is operated by Jack Cox. The store is situate in Lewiston Orchards in Nez Perce County some 5 miles from Lewiston.

Respondents, Retail Clerks Locals 1653 and 1439 and Retail Clerks International Association, AFL–CIO, are labor organizations, the former being associated with the latter. Respondents, Jack Hamilton, Dannie O'Brien and Manley McDonald are representatives of the Retail Clerks International. The two locals are operated under the direction and control of these three individuals. Respondents, James Potts and Marvin Averill, allegedly picketed the store.

On March 24, 1961, appellant entered into a contract with respondent, Retail Clerks Union Local No. 1653, whereby the latter was recognized as the sole bargaining agent for appellant's employees. The contract contained the usual union security and union shop clauses. It was to continue until October 1, 1961, and be automatically renewed from year to year without notice; but either party on notice given 60 days prior to any anniversary date could reopen it for revision discussion.

Shortly before October 1, 1961, two employees inquired of Jack Cox how they could get out of the union, and about two weeks later, two more employees made the same inquiry. Mr. Cox suggested that they should seek an election through Idaho's Commissioner of Labor. About that time the union, through Mr. McDonald, presented to appellant a new three-year union contract.

On February 8, 1962, the union again, this time through Mr. Hamilton, requested appellant to sign the contract. Mr. Cox advised Mr. Hamilton of the store employees' desire to leave the union and the suggested course of action to accomplish the same. Hamilton then told Cox that the employees' request for withdrawal would not be granted and gave appellant until the following Monday or Tuesday to sign the proposed new contract. Mr. Cox, on appellant's behalf, refused to sign the contract because of the desire of four of appellant's five employees to leave the union. On February 16th, without further negotiation, the union placed pickets in front of the store with signs which read: "For information only— Cox's Food Store is non-union. Retail Clerk's Union, Local 1439. AFL–CIO." On February 22nd the union distributed to the store's customers a letter (not in the record) headed "Get a Clear Picture", which stated that Cox had refused to sign the contract, that such refusal was an unfair labor practice, and requested customers not to patronize the store.

Idaho's Commissioner of Labor, at the request of the employees, scheduled an election for February 28, 1962. On that day, however, he received from the Officer in Charge, National Labor Relations Board (hereinafter referred to as NLRB), in Portland, Oregon, the following telegram:

"Responding to your request for telegraphic advice as to whether this agency will assert jurisdiction over Cox's Food Center, Inc., this is to advise that Cox reports total sales in excess of Five Hundred Thousand Dollars during the past calendar year or fiscal year and purchases in excess of Fifty Thousand Dollars during the same year from firms which in turn purchased those goods outside Idaho. You may anticipate that this agency has asserted jurisdiction over Cox's Food Center, Inc. on the basis of Cox's report since the figures he reports are in excess of the minimum required for an assertion of federal jurisdiction under established criteria."

The telegram resulted in cancellation of the scheduled election.

Previous to such telegram, Local 1439 had filed with the NLRB an unfair labor practice charge against the store—Case No. 19–CA–2386. That case was dismissed and the decision was sustained on appeal.

On March 16, 1962, appellant filed a petition, Case No. 19–RM–380, with the NLRB requesting it to proceed under its proper authority and alleged: that the labor organ-

ization had presented a claim to be recognized as the representative of the employees; that no strike was involved; that picketing was being carried on by Retail Clerks Union, Local No. 1439, but that no employees were picketing; that the recognized bargaining agent was Retail Clerks Union, Local No. 1653; that the date of recognition (date of the contract) was March 21, 1961, and the expiration date was October 1, 1961. On April 5, 1962, Local Union No. 1439 by letter to the NLRB concerning Cases No. 19–RM–380 and No. 19–CA–2386 disclaimed any interest in representing the employees in connection with any decertification election.

On May 9, 1962, four of appellant's employees signed a statement wherein they stated in substance that they did not wish union representation by any union; that they were satisfied with hours, wages and working conditions and had no dispute with their employer. On May 25th appellant instituted this action seeking injunctive relief against the picketing, and general and punitive damages because of loss of business which appellant alleged was attributable to the picketing. On July 26, 1962, Idaho's Commissioner of Labor informed the NLRB of the store's claim and that it had again sought an election. In its reply of July 31st, a representative of the Board stated that final determination on the question of jurisdiction of the NLRB in Case No. 19–CA–2386 was not made as the same was dismissed on the basis of lack of merit of the alleged unfair labor practices charged. The director suggested that an advisory opinion of the Board as to its jurisdiction, should be obtained.

On November 2, 1962, the store filed a petition with the NLRB, Case No. 19–RM–429, for the purpose of obtaining a determination of the question of its jurisdiction. The petition again alleged that the union had presented a claim for recognition as bargaining representative of appellant's employees and that the request for recognition as bargaining representative was made on or about February 15, 1962, and on that date the employer had declined recognition.

On November 7, 1962, the NLRB, by a letter of a field examiner to appellant's attorney, indicated that in Case No. 19–RM–429, "before jurisdictional determination can be made," the employer, appellant, should submit a certified statement showing its gross sales for each month during 1961 and 1962 and the source from which the monthly sales were obtained. This request, according to the Board's letter, was made necessary because of the information which appellant submitted November 2, 1962, in Case No. 19–RM–429, that "the total dollar volume of sales for the preceding 12 months is below $500,000, * * *"; whereas, the employer, appellant, "* * * in Case No. 19–RM–380 indicated that the total annual volume of sales was in excess of $500,000 * * *." The Board closed its letter by stating that "With the above information, the determination which you are seeking by the filing of the petition will be made without further delay."

On November 28, 1962, the Seattle regional director of the Board advised appellant's counsel that the petition (Case No. 19–RM–429) had been dismissed because the union no longer claimed to represent a majority of appellant's employees.

On April 11, 1963, the district court, after finding the facts, ruled that it had jurisdiction under the facts and issued the temporary injunction.

On November 12, 1963, the union answered the complaint asserting that the picketing was peaceful and conducted for the sole purpose of advising the public that appellant's store was operated under non-union conditions; that the picketing constituted an exercise of free speech and hence was lawful; that appellant's gross business was in excess of $500,000 a year with substantial purchases and sales in interstate commerce, and that exclusive jurisdiction in the premises was vested in the NLRB. The union denied any unlawful acts on its part.

During January 1964 the deposition of Mr. Jurgens, an accountant, was taken. The deposition had to do with the appel-

278

lant's annual volume of sales for the years 1960, 1961 and 1962. During February 1964, the deposition of Jack Cox was taken.

On April 2, 1964, respondents filed a motion to dissolve the temporary injunction, and a motion for summary judgment "in accordance with the provisions of Rule 56(b) and (c) of the Idaho Rules of Civil Procedure," alleging that the depositions of Jurgens and Cox, and the exhibits attached, showed exclusive jurisdiction of the subject matter in NLRB.

On September 4, 1964, the district court denied respondents' motion for summary judgment. It then entertained a motion by appellant to dissolve the temporary injunction and to dismiss the action, under I.R.C.P. 12(h) (2). Upon hearing the motion October 11, 1964, the court found that appellant's volume of business for 1960 was $561,593.62 and for 1961 was $538,414.71; that appellant was a member of United Retail Merchant's Association with headquarters in Spokane, Washington, and purchased most of its stock for resale from or through that organization, and shipped the same to Lewiston, Idaho; that no labor dispute exists between the parties and that all picketing was peaceful and truthful, being for the purpose of advising the public that the store was non-union; and that the picketing resulted in appellant's sales for 1962 dropping below $500,000, i. e., to $465,671.08. The court then ruled that it did not have jurisdiction but that jurisdiction was exclusively that of the NLRB. The court then ordered the injunction dissolved and the action dismissed. In ruling upon the question and jurisdiction, the court, in its memorandum decision, stated:

"The question of jurisdiction * * * is now one arguably within the jurisdiction of the National Labor Relations Board. * * * the plaintiff [appellant] never exhausted its methods of obtaining a ruling of the Board as to whether it would accept jurisdiction of the controversy involved here. Plaintiff could

have filed with the Board an unfair labor practice charge against the Union, (that is its complaint here) but has not done so. Neither has an advisory opinion as to jurisdiction been properly sought. Thus the Board has not been properly given the opportunity to make in the first instance a ruling as to whether it would accept jurisdiction or not."

Thereupon, the union, by motion supported by affidavits of its counsel, sought amendment of the "motion dismissing action and dissolving temporary injunction," to the end that the court add to the order an award for reasonable attorney's fees and expenses of $1,500, to be levied jointly and severally against appellant and its surety on the injunction bond, which motion the court denied.

The parties thereupon perfected the pending appeals.

Appellant maintains that the district court improperly refused to assert jurisdiction over the dispute herein involved, and that it improperly dismissed the action; and contends that the court erred in holding that the test of interstate commerce used by the NLRB for a retail establishment involves anything other than $500,000 annual dollar volume of business, the court in its finding, having considered that appellant purchased most of its stock in the State of Washington and shipped the same to Lewiston, Idaho, for resale.

In Carolina Supplies and Cement Co., 122 NLRB 88 (1958), the Board, in revising its jurisdictional policies, set forth its revised standard to be applied to all future and pending cases involving retail enterprises in the following language:

"The Board has decided that it will assert jurisdiction over all retail enterprises which fall within its statutory jurisdiction and *which do a gross volume of business of at least $500,000 per annum.* * * *

* * * * * *

"* * * The $500,000 standard chosen by the Board should, in its opinion,

reasonably insure that jurisdiction will be asserted over all labor disputes involving retail enterprises which tend to exert a pronounced impact upon commerce." 122 NLRB at 89, 90.

Thus under the test, a labor dispute involving a retail enterprise doing a volume of business of $500,000 per annum will be regarded as tending to exert a pronounced impact upon commerce.

■ The term "commerce" as so used refers to interstate commerce. See NLRB v. Reliance Fuel Oil Corp., 371 U.S. 224, 83 S.Ct. 312, 9 L.Ed.2d 279 (1963), wherein the United States Supreme Court stated:

"Under § 10(a) of the Act, [29 U.S.C.A. § 160(a)] the Board is empowered 'to prevent any person from engaging in any unfair labor practice (listed in section 8 [29 U.S.C.A. § 158]) affecting commerce.' Section 2(6) [29 U.S.C.A. § 152(6)] defines 'commerce' to mean 'trade, traffic, commerce, transportation, or communication among the * * * States * * *' and § 2(7) [29 U.S.C.A. § 152(7)] declares:

" 'The term "affecting commerce" means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce.' This Court has consistently declared that in passing the National Labor Relations Act, Congress intended to and did vest in the Board the fullest *jurisdictional* breadth constitutionally permissible under the Commerce Clause. See, e. g., Guss v. Utah Labor Relations Board, 353 U.S. 1, 3, 77 S.Ct. 598, 599, 609, 1 L.Ed.2d 601, 603; Polish National Alliance of United States of North America v. National Labor Relations Board, 322 U.S. 643, 647–648, 64 S.Ct. 1196, 1198–1199, 88 L.Ed. 1509, 1514, 1515; National Labor Relations Board v. Fainblatt, 306 U.S. 601, 607, 59 S.Ct. 668, 672, 83 L.Ed. 1014, 1019. Compare Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 480,

75 S.Ct. 480, 487, 99 L.Ed. 546, 557. The Act establishes a framework within which the Board is to determine 'whether proscribed practices. would in particular situations adversely affect commerce when judged by the full reach of the constitutional power of Congress. Whether or no practices may be deemed by Congress to affect interstate commerce is not to be determined by confining judgment to the quantitative effect on the activities immediately before the Board. Appropriate for judgment is the fact that the immediate situation is representative of many others throughout the country, the total incidence of which if left unchecked may well become far-reaching in its harm to commerce.' Polish National Alliance of United States of North America v. National Labor Relations Board, 322 U.S. at 648, 64 S.Ct. at 1199. See also National Labor Relations Board v. Fainblatt, 306 U.S. at 607–608, 59 S.Ct. 672." 371 U.S. at 225–226, 83 S.Ct. at 313–314, 9 L.Ed.2d at 281.

■ Appellant asserts, however, that the court should have considered, as the criterion of the test, appellant's volume of business of less than $500,000 for the year next preceding May 25, 1962, the date of commencement of the action. Again, appellant's position is untenable. Since the dispute arose in the year 1962, the NLRB will look to the employer's 1961 volume of sales which exceeded $500,000, being the "standard" established by the NLRB for assertion of jurisdiction over retailers. The Board, in applying its jurisdictional standards, was looking to the year preceding the one in which the dispute arises. Herein, the picketing, which gave rise to the litigation, commenced in February 1962. Hence the jurisdictional standard would apply to appellant's volume of business for the year 1961, rather than for the year 1962. Such is borne out by the case of Jos. McSweeney & Sons, Inc., 119 NLRB 1399 (1958), in language as follows:

" * * * the Board, in applying its jurisdictional standards, uniformly relies on

the past experience of an employer rather than its future operations. To rely, as the Employer would have us do, on the employers' predictions as to their future operations would invite speculation by them as to matters within their peculiar knowledge. We do not believe that such a policy would be administratively feasible or desirable where, as here, commerce data for a recent annual period is available." 119 NLRB at 1401.

See also Reliance Fuel Oil Corp., 129 NLRB 1166 (1961); NLRB v. Reliance Fuel Oil Corp., supra.

■ The union is correct in its assertion that, though appellant may have suffered some loss of gross volume of business commencing in 1962 to a figure below $500,000 for that year due to the picketing, such cannot be taken into consideration as a factor in defeasance of the jurisdiction of the NLRB. Such is borne out by the reasoning of Essex County, Vicinity Dist. Council of Carpenters, etc., 95 NLRB 969 (1951), as follows:

"* * * the Board, however, in enunciating the standards by which it would determine whether the policies of the Act would be effectuated by asserting jurisdiction, did not intend that the criteria which were adopted must be satisfied in the most strict and literal sense. * * *

"In the instant case, the record clearly shows that the operations of Fairmount at the Ivy Hill project were severely curtailed by the strike which became the subject of the unfair labor practice charges now before the Board. If, absent the occurrence of this strike, the operations of Fairmount would have met the requirements set forth by the Board for asserting jurisdiction, a dismissal for want of jurisdiction would be self-defeating. In that instance the Board would be deprived of jurisdiction to adjudicate and correct an alleged unfair labor practice by the very conduct which is the subject of the complaint. It thus becomes essential to determine, not alone what the operations of Fairmount were during the period in question, but what those operations would have been but for the strike. It is clear that there is no method by which the operations and flow of commerce absent the strike can be precisely measured. However, the Board considers the sharp decline in the purchases of Fairmount during 1949 as indicating that the 1948 operations of that company would have been appreciably higher had not the strike occurred. * * * If, as is an inescapable conclusion from the record, these purchases were for the most part made before the strike commenced in May of that year, it is a reasonable conclusion that the operations of Fairmount in 1948 would have met or surpassed the minimum inflow requirements had not the strike taken place. Accordingly, the Board finds that it would effectuate the policies of the Act to assert jurisdiction over the operations of Fairmount Construction Company." 95 NLRB at 971.

Appellant contends that the district court improperly refused to assert jurisdiction over the alleged labor dispute herein involved; specifically it contends that in refusing jurisdiction and in dismissing the action the court committed error in holding (1) that the picketing was for informational purposes rather than for an illegal objective; and (2) that picketing is permissible in the State of Idaho in the absence of a labor dispute as such is defined by I.C. § 44–712. Those assignments of error encompass the question of federal preemption in the labor-management area where the controversy affects interstate commerce.

■■ The scope of federal preemption has not been precisely delineated; nonetheless, some rules governing the application of the law in this area have been established. For example, the Supreme Court has consistently held that the National Labor Relations Act does not prohibit a state from dealing with violence and its conse-

quences if such are present in a labor controversy otherwise subject to federal regulation. Local 20, Teamsters, Chauffeurs and Helpers Union v. Morton, 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964); San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); International Union, U.A., A. & A.I.W. of America (UAW-CIO) v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958); United Constr. W. v. Laburnum Constr. Corp., 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025 (1954). See also Solo Cup Co. v. International Bro. of P., S. & P.M. Wkrs., 237 Md. 143, 205 A.2d 213 (1964). The broad general rule, however, is that the state courts have no power to enjoin peaceful picketing which constitutes an unfair labor practice under the National Labor Relations Act. Liner v. Jafco, 375 U.S. 301, 84 S.Ct. 391, 11 L.Ed.2d 347 (1964); Local No. 438 Construction and General Laborers' Union, AFL-CIO v. Curry, 371 U.S. 542, 83 S.Ct. 531, 9 L.Ed.2d 514 (1963); Hotel Employers Union, Local No. 255 v. Sax Enterprises, Inc., 358 U.S. 270, 79 S.Ct. 273, 3 L.Ed.2d 289, reh. den. 359 U.S. 921, 79 S.Ct. 576, 577, 3 L.Ed.2d 583 (1959); San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon, supra; Plumbers, etc. 298 v. County of Door, 359 U.S. 354, 79 S. Ct. 844, 3 L.Ed.2d 872 (1959); Amalgamated Meat Cutters, etc. v. Fairlawn Meats, 353 U.S. 20, 77 S.Ct. 604, 1 L.Ed.2d 613 (1957); Weber v. Anheuser-Busch, 348 U. S. 468, 75 S.Ct. 480, 99 L.Ed. 546 (1955); Capital Service v. N. L. R. B., 347 U.S. 501, 74 S.Ct. 699, 98 L.Ed. 887 (1954); Garner v. Teamsters, C. & H. Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953). See also Baltimore Bldg. & Cons. Tr. Coun. v. Maryland Port A., 238 Md. 232, 208 A.2d 564 (1965).

San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon, supra, involved facts similar to the case at bar. In that case the unions sought from the employers an agreement to retain in their employ only those workers who were already members of the unions, or who applied for membership within thirty days. The employers refused, claiming that none of the employees had shown a desire to join a union; nor had a union been designated by the employees as a collective bargaining agent. The unions thereupon commenced peaceful picketing of the employer's place of business, and thereby exerted pressure on customers and others to persuade them to stop dealing with the employer. As stated by the court, "The sole purpose of these pressures was to compel execution of the proposed contract." The California courts granted injunctive relief against the picketing and awarded damages, which the United States Supreme Court set aside.

The Garmon decision appears to be the principal case on the question of federal preemption in the labor-management field. Therein the United States Supreme Court held that the National Labor Relations Act precluded a state court from granting an award for damages where it was at least *arguable* that the union activity against which complaint had been made fell within the compass of the "concerted activities" which are protected by § 7 of the National Labor Relations Act, or was an unfair labor practice under § 8 of the Act (29 U.S. C.A. §§ 157, 158). The Garmon decision went one step further than the previous decision of the court, holding that the states could not enjoin peaceful picketing arguably regulated under the federal statute, when it determined that, under such circumstances, the state courts were also barred from awarding damages for loss of profit suffered because of unlawful, though nonviolent, union activity. Such conclusion rests upon the rationale that regardless of the remedy sought, whether injunction or damages, state control over a subject of national regulation "would create potential frustration of national purposes" expressed in the National Labor Relations Act. Thus a state could not act except in instances of actual or potential conduct, vio-

lent or destructive in nature, threatening the public order.

Four justices, specially concurring in the Garmon decision, stated that they did so only on the ground that the union activity, for which the state court had awarded damages, might fairly be considered protected under the federal act, but added that if it were clear that the union activity was not so protected, the state, though barred from enjoining the peaceful but unlawful picketing—an unfair labor practice,—would not be barred from awarding damages resulting from such activity.

The Garmon decision acknowledged that not infrequently it is not clear whether particular activity which the states attempt to regulate is in fact governed either by § 7 or § 8 of the National Labor Relations Act or is actually outside the scope of both of these sections, and thus theoretically subject to state control. The opinion pointedly added, however, that the courts—federal and state—were not the tribunals to adjudicate that issue, but that such determination in the first instance must be left with the National Labor Relations Board. Such result, it was reasoned, was essential to the proper administration of the Act; also, was to avoid "disharmonies inherent in two systems, one federal the other state, of inconsistent standards of substantive law and differing remedial schemes."

The rule, thus enunciated in the Garmon decision, has since been consistently followed or acknowledged. Liner v. Jafco, supra; Marine Engineers Ben. Asso. v. Interlake S. S. Co., 370 U.S. 173, 82 S.Ct. 1237, 8 L.Ed.2d 418 (1962). See also Baltimore Bldg. & Const. Tr. Coun. v. Maryland Port A., supra. In Hanna Min. Co. v. District 2, M.E.B.A., AFL-CIO, 382 U.S. 181, 86 S.Ct. 327, 15 L.Ed.2d 254, (1965), the United States Supreme Court summarized the ground rules for federal preemption in the field of labor law emerging from the Garmon decision, in the following language: " * * * in general, a State may not regulate conduct arguably 'protected by § 7, or prohibited by § 8' of the National Labor Relations Act, see 359 U.S., at 244–246, 79 S.Ct. 779–780, 3 L.Ed.2d at 782, 783; and the legislative purpose may further dictate that certain activity 'neither protected nor prohibited' be deemed privileged against state regulation, cf. 359 U.S. at 245, 79 S.Ct. at 779, 3 L.Ed.2d at 783. * * *" 382 U.S. at 187, 86 S.Ct. at 331, 15 L.Ed.2d at 259.

In the case at bar the district court found that the picketing (and distribution of letters—though the letters were not introduced as evidence) conducted by the union was for the purpose of truthfully advising the public that appellant does not employ members of, or have a contract with, a labor organization, and that the picketing did not have the prohibitory effect mentioned in 29 U.S.C.A. § 158(b) (7) (C). Whether in fact the picketing was, as appellant claims, recognitional and/or organizational and thus prohibited under § 8(b) (7) or merely informational as found by the trial court, and thus a protected union activity under the second proviso of § 8(b) (7) (C) is not here material. The fact is that the union activity against which appellant complains, is either arguably protected or prohibited under the Federal National Labor Relations Act. Under such circumstance, the district court must, under the doctrine of federal preemption, defer to the exclusive competence of the National Labor Relations Board, should it assert jurisdiction in the premises.

Under the Garmon decision, the requirement that the states must yield to the primary jurisdiction of the NLRB does not insure Board adjudication of the status of a disputed activity. Following its earlier decision in Guss v. Utah L.R.B., 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed.2d 601 (1957); Amalgamated Meat Cutters etc. v. Fairlawn Meats, supra; and the first appeal filed in the Garmon case, 351 U.S. 923, 76 S.Ct. 782, 100 L.Ed. 1453, (1956), the United States Supreme Court held that the refusal of the NLRB to assert jurisdiction in a case where it was vested with jurisdiction did not give

the state the power to regulate activities which they would otherwise be preempted from regulating.

Subsequently, in 1959 Congress amended the National Labor Relations Act to provide for state jurisdiction over labor disputes where the NLRB had declined jurisdiction, the complete text, 29 U.S.C.A. § 164, reading:

"*Supervisors as union members; recognition by employers; declination of jurisdiction by Board over labor disputes; assertion of jurisdiction by State or Territorial agencies and courts*

"(a) Nothing herein shall prohibit any individual employed as a supervisor from becoming or remaining a member of a labor organization, but no employer subject to this subchapter shall be compelled to deem individuals defined herein as supervisors as employees for the purpose of any law, either national or local, relating to collective bargaining.

"(b) Nothing in this subchapter shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law.

"(c) (1) The Board, in its discretion, may, by rule of decision or by published rules adopted pursuant to the Administrative Procedure Act, decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction: *Provided,* That the Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction under the standards prevailing upon August 1, 1959.

"(2) Nothing in this subchapter shall be deemed to prevent or bar any agency or the courts of any State or Territory (including the Commonwealth of Puerto Rico, Guam, and the Virgin · Islands), from assuming and asserting jurisdiction over labor disputes over which the Board declines, pursuant to paragraph (1) of this subsection, to assert jurisdiction."

Subsection (c) was added September 14, 1959, by Pub.L. 86–257, Tit. VII, § 701 (a), 73 Stat. 541.

As hereinbefore pointed out, the NLRB in 1958, in Carolina Supplies and Cement Co., supra, in redefining its jurisdictional standards, decided to assert jurisdiction over retail enterprises which fall within its statutory jurisdiction and which do a gross volume of business of at least $500,000 per annum. Such appears to have been the standard prevailing on August 1, 1959, 29 U.S.C.A. § 164(c) (1). However, the statute provides that the Board may decline to assert jurisdiction, in which event the state court may assume and assert jurisdiction of the alleged labor dispute.

After the enactment of the 1959 amendment to 29 U.S.C.A. § 164, Title 29 (Labor), Code of Federal Regulations, was revised so as to provide for petitioning the NLRB for an advisory opinion regarding the Board's jurisdiction. Chap. 1, subpart H, relates to declaratory orders and advisory opinions regarding NLRB jurisdiction. Sec. 102.98 thereof reads:

"*Petition for advisory opinion; who may file; where to file*

"(a) Whenever a party to a proceeding before any agency or court of any State or Territory is in doubt whether the Board would assert jurisdiction on the basis of its current jurisdictional standards, he may file a petition with the Board for an advisory opinion on whether it would assert jurisdiction on the basis of its current standards.

"(b) Whenever an agency or court of any State or Territory is in doubt whether the Board would assert jurisdiction over the parties in a proceeding pending before such agency or court, the agency

or court may file a petition with the Board for an advisory opinion on whether the Board would decline to assert jurisdiction on the basis of its current standards."

Subsequent sections of those regulations set forth the requirements as to contents of petitions for advisory opinions, together with subsequent proceedings before the Board and dispositions and determinations to be made as regards any such petitions.

■ As hereinbefore pointed out, the record herein reveals that the NLRB dismissed the unions' petition charging appellant with unfair labor practices under § 8 (a) (1) and (5), 29 U.S.C.A. § 158(a) (1) and (5). In that regard respondent Hamilton, by letter dated April 5, 1962, addressed to the NLRB field representative of the Seattle, Washington, office, in reference to the union's pending matter, clarified the union's position as follows:

"The employer by it's actions in the unfair labor practices has destroyed the Union's majority and will render any election a futility."

Thereupon the union disclaimed any representation of appellant's employees. The record also shows the NLRB dismissed the petition of appellant, requesting an election by the employees for the purpose of determining their bargaining representative. The dismissal was on the ground that the union did not claim to represent a majority of appellant's employees. The dismissals did not ipso facto constitute declinations of the NLRB to assert jurisdiction.

■ In the light of the record as aforesaid we are constrained to the view that the district court should petition the NLRB under authority of 29 U.S.C.A. § 164 and 29 Code of Federal Regulations, subpart H, sec. 102.98(b) et seq., for an advisory opinion "on whether the Board would decline to assert jurisdiction on the basis of its current standards."

■ We now approach respondents' cross-appeal. Respondents assign error of the district court in denying their motion to assess damages of $1,500 in their favor in the form of attorney's fees and expenses incurred by them in the matter of the dissolution of the temporary injunction, on the ground, inter alia, that the motion was premature. In the light of the disposition of appellant's appeal, which requires reversal of the summary judgment and reinstatement of the action, we are in accord with the ruling of the trial court that the motion was premature.

The order dissolving the temporary injunction and dismissing the action for lack of jurisdiction is reversed and the action is reinstated with the following instructions:

1. That pursuant to and as authorized by Title 29 (Labor) Code of Federal Regulations, chap. 1, subpart H. sec. 102.98(b) the district court is directed to petition the National Labor Relations Board for an advisory opinion "on whether the Board would decline to assert jurisdiction on the basis of its current standards," over the parties in the present action pending before the court.

■ 2. That in the event the NLRB renders the advisory opinion that it will assert jurisdiction in the premises, that the court continue its jurisdiction in the action until a final determination by the NLRB, and review or appellate remedies, if pursued by the parties, or either of them, have been exhausted; and

■ 3. That in the event the NLRB renders an advisory opinion to the effect that it declines to assert jurisdiction, that thereupon the court try the action on the merits.

The order of the court denying to respondents recovery of damages in the form of attorney's fees and costs, upon dissolution of the temporary injunction, is set aside with instructions to hold in abeyance respondents' motion therefor, pending the final outcome of the action.

Costs to appellant.

TAYLOR and SPEAR, JJ., concur.

McQUADE, Justice (dissenting).

By act of Congress, September 14, 1959, "the [National Labor Relations] Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction under the standards prevailing upon August 1, 1959." 29 U.S.C. § 164(c) (1) Proviso.[1] Respondents union's activity complained of by appellant is clearly a "labor dispute." 29 U.S.C. § 152(9);[2] National Maritime Union of America, AFL-CIO v. N.L.R.B., 342 F.2d 538 (2d Cir. 1965). Cf. Liner v. Jafco, Inc., 375 U.S. 301, 84 S.Ct. 391, 11 L.Ed.2d 347 (1964). See Lauf v. E. G. Shinner & Co., 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872 (1938); New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 58 S.Ct. 703, 82 L.Ed. 1012 (1938); Marine Cooks and Stewards AFL v. Panama S. S. Co., 362 U.S. 365, 80 S.Ct. 779, 4 L.Ed.2d 797 (1960). (The three preceding cases were decided under the Norris-LaGuardia Act, 29 U.S.C. § 113[3], wherein the term "labor dispute" is defined in virtually the exact language of 29 U.S.C. § 152[9].) Cf., N.L.R.B. v. International Longshoremen's Association, 332 F.2d 992 (4th Cir. 1964).

The "standards" referred to are minimum dollar amounts established by the Board for jurisdictional purposes, and included within "the standards prevailing upon August 1, 1959," are:

"all retail enterprises which fall within its [the Board's] statutory jurisdiction and *which do a gross volume of business of at least $500,000 per annum * * ** whether it [the retail enterprise] consists of one or more establishments or locations, and whether it operates in one or more States.

"* * * [T]he Board [has] decided to apply only a gross volume of business standard to such [retail] enterprises." Carolina Supplies and Cement Co., 122 NLRB 88 (1958). (Italics in original.) See 23 NLRB Ann.Rep. 7–8 (1958).

See 25 NLRB Ann.Rep. 18–19 (1960), 105 Cong.Rec. 6548–6549; Leedom v. Fitch Sanitarium, Inc., 111 U.S.App.D.C. 55, 294 F.2d 251, 255 (Appendix) (1961); McCulloch v. Sociedad Nacional, 372 U.S. 10, 20 n. 10, 83 S.Ct. 671, 677 n. 10, 9 L.Ed.2d 547 n. 10 (1963); cf. Hirsch v. McCulloch, 112 U.S.App.D.C. 348, 303 F.2d 208 (1962); N.L.R.B. v. Pease Oil Company, 279 F.2d 135 (2d Cir. 1960); see also Siemons Mailing Service, 122 NLRB 81 (1958). In *Carolina Supplies,* after announcing the above standard, the Board proceeded to consider only the gross volume of business of the petitioner therein, noting that "all sales were made within the State of South Carolina" (122 NLRB at 88) and, finding the gross volume to be $635,000, asserted jurisdiction (122 NLRB at 90). See Great Atlantic & Pacific Tea Company, Inc., 132 NLRB 797 (1961); Keystone Universal Carpet Company, 130 NLRB 4 (1961); accord, Lansing Automakers Federal Credit Union, 150 NLRB 1122 (1965); see also National Labor Relations Board v. Reliance Fuel Corp., 371 U.S. 224, 83 S.Ct. 312, 9 L.Ed.2d 279 (1963). See also N.L.R.B. v. Carroll-Naslund Disposal, Inc., 359 F.2d 779 (9th Cir. 1966).

1. Neither the original House nor Senate Bills contained the above provision. It was added in conference. Regarding it, Representative Thompson of New Jersey, a conferee, remarked to the House on September 4, 1959:
"The conferees insisted upon an amendment which prevents the NLRB from declining to exercise its existing jurisdiction and thereby depriving both employers and employees of the protection of the National Labor Relations Act. * * * The conference report prevents further cession. The current standards of the NLRB assure the widest effective exercise of Federal jurisdiction in the history of the National Labor Relations Act." 105 Cong.Rec. 18134.

2. "(9) The term 'labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee."

To be within the Board's "statutory jurisdiction," the retail enterprise involved in the labor dispute must engage in operations "affecting commerce." 29 U.S.C. § 160(a). In the case at bar, the trial court found:

"That plaintiff [appellant] buys most of its purchases of stock for resale from or through said organization [a merchants' cooperative headquartered in Spokane, Washington] and the same are transported by truck from Spokane, Washington, to Lewiston, Idaho;"

Schedule A of appellant's U. S. corporate income tax return for 1961 reports $445,333.96 of merchandise brought for sale. (For 1960 the figure was $385,101.63) Appellant's out-of-state purchases for resale clearly place it within the Board's statutory jurisdiction since its "inflow" operations are of sufficient magnitude to "affect commerce." 29 U.S.C. §§ 152(6) and 152(7).[3] Raynal Plymouth Corporation, 131 NLRB 1040, 1045 (1961); cf. Guss v. Utah Labor Relations Board, 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed.2d 601 (1957); National Labor Relations Board v. Denver Bldg. & Const. Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284 (1951); National Labor Relations Board v. Stoller, 207 F.2d 305 (9th Cir. 1953), cert. den. 347 U.S. 919, 74 S.Ct. 517, 98 L.Ed. 1074 (1954); Southern Dolomite, 129 NLRB 1342 (1961); see National Labor Relations Board v. Reliance Fuel Corp., supra; 26 NLRB Ann.Rep. 23 (1961). The words "gross volume of business" have been equated with gross sales by both the Board, Fashion Mills, Inc., Etc., 127 NLRB 731 (1960), and the United States Supreme Court, National Labor Relations Board v. Reliance Fuel Corp., supra.

"When an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act [29 U.S.C. § 157 or § 158], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board * *." San Diego Bldg. Trade Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 245, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959). See Weber v. Anheuser-Busch Inc., 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546 (1955); Garner v. Teamsters, Chauffeurs etc. Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953).

In San Diego Bldg. Trades Council Millmen's Union v. Garmon, supra, the Supreme Court of the United States recognized, as the only exception to total federal preemption in the area of labor disputes "affecting commerce," that the States have power to enjoin and compensate for "the consequences * * * of conduct marked by violence and imminent threats to the public order." 359 U.S. at 247, 79 S.Ct. at 781. On February 21, 1966, the Supreme Court of the United States ruled, Linn v. United Plant Guard Workers of America, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), that a federal district court had jurisdiction to apply state remedies for false and misleading statements circulated during a union organizing campaign if the complainant pleads and proves that the statements were made with malice and injured him. That court observed that "the exercise of state jurisdiction here would be a 'merely peripheral concern of the Labor Management Relations Act,'" 383 U.S. at 61, 86 S.Ct. at 662, 15 L.Ed.2d at 589, stressing the "'type of conduct' involved, i. e., 'intimidation and threats of violence,' affect[ing] such compelling state interests as to permit the

---

3. "(6) the term 'commerce' means trade, traffic, commerce, transportation, or communication among the several States, or between the District of Columbia or any Territory of the United States and any State or other Territory, or between any foreign country and any State, Territory, or the District of Columbia, or within the District of Columbia or any Territory, or between points in the same State but through any other State or any Territory or the District of Columbia or any foreign country."

"(7) The term 'affecting commerce' means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce."

exercise. of state jurisdiction. *Garmon,* supra, 359 U.S. at 248, 79 S.Ct. at 781." (Italics in original) The opinion then states:

"We similarly conclude that a State's concern with redressing malicious libel is 'so deeply rooted in local feeling and responsibility' that it fits within the exception specifically carved out by *Garmon*."

The court also noted:

"The function of libel suits in preventing violence has long been recognized." 383 U.S. at 64 n. 6, 86 S.Ct. at 664 n. 6, 15 L.Ed.2d at 590 n. 6.

In a dissenting opinion, Mr. Justice Fortas said:

"Today marks the first departure from what has become a well-established rule that only where the public's compelling interest in preventing violence or the threat of violence is involved can the exclusiveness of the federal structure for resolving labor disputes be breached." 383 U.S. at 72, 86 S.Ct. at 668, 15 L.Ed.2d at 595.

This dissent also noted that the United States Supreme Court had "narrowly restrict[ed] the permissible exceptions to the general rule of pre-emption [of labor disputes]." 383 U.S. at 72, 86 S.Ct. at 668, 15 L.Ed.2d at 595. Cf., Heldman v. Local 84, Intl's Molders & Allied Workers Union, AFL–CIO, 50 Misc.2d 444, 270 N.Y.S.2d 738 (Supreme Court, Queens Co., Part 1, May 23, 1966). See Hanna Min. Co. v. District 2, M.E.B.A., 382 U.S. 181, 86 S.Ct. 327, 15 L.Ed.2d 254 (1965).

In its order dismissing the action and dissolving the temporary injunction, the trial court here found:

"That all picketing was peaceful and truthful and for the purpose of advising the public that plaintiff is 'non-union.'"

This finding, substantiated by the record and unquestioned by the majority, brings respondent union's activity squarely within the protection of § 8(b) (7) of the Labor Management Relations Act, 29 U.S.C. § 158(b) (7) (C):

"*Provided further,* that nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, * * *. (Italics in original)

Cf. N. L. R. B. v. Local 3, Int'l Brotherhood of Electrical Workers, 339 F.2d 600 (2d Cir. 1964); see N. L. R. B. v. Local 239, International Bro. of Teamsters, Etc., 340 F.2d 1020 (2d Cir. 1965); N. L. R. B. v. Local 3, International Bro. of Electrical Workers, 317 F.2d 193 (2d Cir. 1963); see also 29 U.S.C. § 157. The trial judge states in his memorandum opinion "that the picketing did not have the prohibitory effect mentioned in 29 U.S.C.A. 158(b) (7) (C),"[4] which effect (secondary boycott) would remove the picketing from its protected status.

The trial judge found that appellant's gross retail sales were $561,593.52 for 1960 and $538,414.71 for 1961. The 1961 figure is supported by appellant's federal corporate income tax return for that year, and Jack Cox, appellant's owner, admitted, approximately, both figures. The picketing complained of herein began in February 1962. Thus, for purposes of jurisdiction, the National Labor Relations Board will look to appellant's business volume for 1961. Jos. McSweeney & Sons, Inc., 119 NLRB 1399 (1958); Keystone Universal Carpet Company, supra; see Aroostook Federation of Farmers, Inc., 114 NLRB 538 (1955); 23 NLRB Ann.Rep. 12 (1958).

---

4. "* * * [Informational picketing is a protected labor activity] unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services."

Moreover, the trial court found that the picketing complained of herein "resulted in plaintiff's [appellant's] sales running below $500,000.00 to wit; $465,671.08 for the full calendar year of 1962." Even if, given the facts of this case, the Board would normally consider the 1962 figure, since the picketing complained of caused the 1962 drop in gross sales, the Board would not consider the 1962 figure as a factor in defeasance of its jurisdiction. Essex County, Vicinity Dist. Council of Carpenters, Etc., 95 NLRB 969 (1951); Hygienic Sanitation Company, 118 NLRB 1030 (1957).

Thus, respondent union's picketing, of which appellant complains, presents a "labor dispute," and if the picketing activity was in fact peaceful and informational, as found by the trial judge, it was protected by federal statute. 29 U.S.C. § 158(b) (7) (C); 29 U.S.C. § 157. If, as contended by appellant, the picketing constituted an unfair labor practice, it was prohibited by federal statute. 29 U.S.C. § 158(b). In either case the power to regulate the picketing complained of herein is exclusively vested in the competence of the National Labor Relations Board. See San Diego Bldg. Trades Council Millmen's Union v. Garmon, supra; cf. Linn v. United Plant Guard Workers of America, supra; see also Hanna Min. Co. v. District 2, M.E.B.A., supra.

The Board has power under certain conditions to decline to exercise its exclusive jurisdiction and thereby subject a labor dispute to state regulation. 29 U.S.C. § 164(c). However, due to appellant's undisputed gross sales for 1961 (and 1960) and its undisputed volume of purchases for resale in interstate commerce during that period, the Board has no discretion to decline jurisdiction over the dispute involved herein. 29 U.S.C. § 164(c) proviso. Carolina Supplies and Cement Co., supra; Great Atlantic & Pacific Tea Company, Inc., supra; Keystone Universal Carpet Company, supra (gross sales). Raynal Ply-

mouth Corporation, supra; Guss v. Utah Labor Relations Board, supra; National Labor Relations Board v. Stoller, supra (purchases made in interstate commerce). Cf. N.L.R.B. v. Cartaret Towing Company, 307 F.2d 835 (4th Cir. 1962); see Anno. 9 L.Ed.2d 1100, 1102 ("Since the 1958 standards relating to retail enterprises prevailed on August 1, 1959, the statute [29 U.S.C. § 164(c)] apparently has the effect of requiring the Board to assert jurisdiction of retail enterprises which do a gross volume of business of at least $500,000 annually."). Cf., Leedom v. Fitch Sanitarium, Inc., supra; see also Radio and Television Broadcast Technicians Local Union v. Broadcast Serv., 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965).

The courts of Idaho have no proper concern with regulation of activity so clearly within the exclusive competence of the National Labor Relations Board as the picketing complained of herein. The majority opinion also concludes that the controversy here is within the exclusive competence of the Board and that the Board must assert jurisdiction in the premises. However, the majority improperly dilutes the judicial authority of the district court below in directing that it seek the Board's advisory opinion "whether the Board would decline to assert jurisdiction on the basis of its current standards." 29 C.F.R. 102.98(b).

From the contents of the regulation, this procedure does not seem properly applicable to the controversy before this court for two reasons. First, the question of jurisdiction herein does not pertain to "current standards" of the Board, for, as noted above, the $500,000.00 gross volume retail standard was "frozen" on September 14, 1959, by 29 U.S.C. § 164(c) (1). Secondly, the regulation provides for an advisory opinion "[w]henever * * * [any] court * * * is in doubt whether the Board would assert jurisdiction." Here the findings of the trial court relating to appellant's commerce data for 1961 (and 1960) leave no doubt that the Board has no discretion to decline jur-

isdiction, "on the basis of its current standards," over the controversy herein. Carolina Supplies and Cement Co., supra; 23 NLRB Ann.Rep. 7–8 (1958); 25 NLRB Ann.Rep. 18–20 (1960); Great Atlantic & Pacific Tea Company, Inc., supra; Keystone Universal Carpet Company, supra; cf. Leedom v. Fitch Sanitarium, Inc., supra.

Even if the Board's assertion of its exclusive jurisdiction herein were in doubt, as a matter of policy it seems unbefitting the district court below, or any court in this state, to petition for the Board's advisory opinion regarding jurisdiction. Such conduct casts a court in the role of advocate for one of the parties (in the case at bar, for appellant). Note that upon filing a petition for the Board's advisory opinion, the District Court below as "petitioner shall immediately serve \* · \* \* a copy of the petition upon all parties to the proceeding and upon the director of the Board's regional office having jurisdiction \* \* \*." 29 C.F.R. 102.100. See 29 C.F.R. 102.112 and 102.113(b).

29 C.F.R. 102.98(a) permits a party litigant to petition for the Board's advisory opinion. On July 31, 1962, the Board's regional director for the Lewiston area, Thomas P. Graham (the regional office is located in Seattle, Washington), telephoned and wrote to the Idaho Commissioner of Labor. This was in response to the Commissioner's telegram of July 26, 1962, which noted that appellant had requested a representation election and sought Regional Director Graham's advice whether the National Labor Relations Board would take jurisdiction. Director Graham stated that the Board had never made a final determination whether it had jurisdiction over

appellant (previously the federal Board had dismissed an unfair labor charge by respondent union on the merits without reaching the question of jurisdiction; the Board had also indicated that it would assert jurisdiction on the basis of Cox's reported income in excess of $500,000 for 1962). He cited Regulation 102.98 (29 C.F.R. 102.-98) and suggested that "either one of the parties or your agency may wish to avail themselves of the opportunity of obtaining an advisory opinion by the Board." On November 2, 1962, appellant's attorney wrote to Director Graham, noted that this case was pending in the District Court in Lewiston, and enclosed a petition (Form NLRB–502 [4–53]) for representation election.[5] This petition form does not provide for any commerce data. The letter stated appellant's records showed that its total "sales for the preceding 12 months is below $500,000, and for the preceding 6 months, it ran about $38,000 per month." The letter stated "that the enclosed be filed for the purpose of having the question of jurisdiction determined immediately or as soon as possible," and closed with the request, "May we hear from you as soon as possible with reference to the processing of this Petition." On November 7, 1962, a Board hearing examiner wrote to appellant's attorney, "As I think you are aware, no jurisdiction determination was made by the Board in the prior cases involving this Employer." The letter noted the conflict in the gross sales figures contained in appellant's attorney's letter of November 2, and "the information submitted by the Employer in Case No. 19–RM–380 [which] indicated that the total annual volume of sales was in excess of $500,000," and stated that, therefore, "it will be necessary, before

---

5. The printed form of petition (Form NLRB–502 [4–53]) states:
"The Petitioner alleges that the following circumstances exist and requests that the National Labor Relations Board proceed under its proper authority:
"1. Purpose of this Petition *(Check only the one box which is appropriate)*
· \*       \*       \*       \*       \*

"B ☒ [the item checked by appellant] RM-REPRESENTATION (EMPLOYER).—One or more individuals or labor organizations have presented a claim to Petitioner to be recognized as the representative of employees of Petitioner as defined in section 9(a) of the act."

290

jurisdictional determination can be made, for the Employer to submit" a certified statement of 1961 and 1962 gross sales, and an indication of the source from which obtained. The letter concluded, "With the above information, the determination which you are seeking by the filing of the petition will be made without further delay." On November 28, 1962, Board· Regional Director Graham wrote appellant that its petition "for an investigation and certification of representatives" was then being dismissed since investigation showed that "the labor organizations named in your petition does not now claim to represent a majority of the employees in the unit described." This letter of November 28, 1962, is the latest communication between appellant and the National Labor Relations Board contained in the record. In this regard the trial judge stated in his memorandum decision:

"In my humble opinion, the plaintiff never exhausted its methods of obtaining a ruling of the Board as to whether it would accept jurisdiction of the controversy involved here. Plaintiff could have filed with the Board an unfair labor practice charge against the Union, (that is its complaint here) but has not done so. Neither has an advisory opinion as to jurisdiction been properly sought. Thus the Board has not been properly given the opportunity to make in the first instance a ruling as to whether it would accept jurisdiction or not."

From the preceding discussion it would seem improper judicial administration for this court to order the district court below to petition for the National Labor Relations Board's advisory opinion regarding its jurisdiction over the controversy herein. I would affirm.

McFADDEN, C. J., concurs in the dissent.