**Boyd LEEDOM, as Chairman, et al., as Members of the National Labor Relations Board, an Agency of the United States Government, Appellants,**

v.

**FITCH SANITARIUM, INC., Appellee.**

**No. 16215.**

United States Court of Appeals
District of Columbia Circuit.

Argued June 5, 1961.

Decided June 29, 1961.

---

Mr. James C. Paras, Atty., N. L. R. B., with whom Messrs. Stuart Rothman, Gen. Counsel, N. L. R. B., Dominick L. Manoli, Associate Gen. Counsel, N. L. R. B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., and Allison W. Brown, Jr., Atty., N. L. R. B., Washington, D. C., were on the brief, for appellant.

Mr. Sanford H. Markham, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, New York City, for appellee.

Messrs. Joseph B. Gildenhorn and Gerald J. Miller, Washington, D. C., also entered appearances for appellee.

Before EDGERTON, FAHY and BASTIAN, Circuit Judges.

FAHY, Circuit Judge.

The members of the National Labor Relations Board, herein referred to as the Board, appeal from an order of the District Court requiring the Board, in an action filed by appellee, the Fitch Sanitarium, Incorporated, herein referred to as the Sanitarium, to assert jurisdiction of a representation petition filed by the Sanitarium with the Board under section 9(c) (1) (B) [1] of the National Labor Relations Act. The court at the same time denied the Board's motion to dismiss the action or, in the alternative, for summary judgment.

The Sanitarium is a proprietary hospital in New York City. On July 8, 1959, it filed its petition that the Board conduct an election to determine whether or not its employees desired to be represented by Local 144, Hotel and Allied Service Employees Union, Building Service Employees International Union, AFL-CIO. The Union was seeking recognition by the Sanitarium as the collective bargaining representative of its employees. The Board dismissed the petition, stating that to assert jurisdiction would not effectuate the policies of the Act.

The District Court erred in ordering the Board to assert jurisdiction unless the decision of the Board not to do so deprived the Sanitarium of a right assured to it by the Act. Leedom v. Kyne, 358 U.S. 184, 189, 79 S.Ct. 180, 3 L.Ed.2d 210, affirming 101 U.S.App.D.C. 398, 249 F.2d 490. Thus, the question is whether the Act, as amended, left no discretion in the Board to decline jurisdiction over the question concerning representation presented by the Sanitarium. See Leedom v. International Bhd. of

1. 61 Stat. 144 (1947), 29 U.S.C. § 159(c) (1) (B) (1958), 29 U.S.C.A. § 159(c) (1) (B).

Electrical Workers, 107 U.S.App.D.C. 357, 278 F.2d 237; International Ass'n of Tool Craftsmen v. Leedom, 107 U.S. App.D.C. 268, 276 F.2d 514, certiorari denied, 364 U.S. 815, 81 S.Ct. 45, 5 L.Ed. 2d 46; Leedom v. Norwich Conn. Printing Union, 107 U.S.App.D.C. 170, 275 F.2d 628, certiorari denied, 362 U.S. 969, 80 S.Ct. 955, 4 L.Ed.2d 900.

The governing provision of the Act is section 14(c) (1), added in 1959. It reads:

"(c) (1) The Board, in its discretion, may, by rule of decision or by published rules adopted pursuant to the Administrative Procedure Act, decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction: *Provided,* That the Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction under the standards prevailing upon August 1, 1959.[2]"

In dismissing the Sanitarium's petition the Board followed a decision it had rendered the day before, January 13, 1960, in the case of Flatbush General Hospital.[3] It there determined that although the activities of proprietary hospitals are "not wholly unrelated to commerce," their operations "are essentially local in nature and therefore the effect on commerce of labor disputes involving such hospitals is not substantial enough to warrant the exercise of the Board's jurisdiction." [4]

■ The Sanitarium does not contend that the opening provision of section 14 standing alone would not warrant the exclusion of this class of employers. It urges that the proviso to the section precludes such exclusion because there was here a labor dispute "over which it [the Board] would assert jurisdiction under the standards prevailing upon August 1, 1959." In support the Sanitarium points to several cases antedating August 1, 1959, in which the Board had assumed jurisdiction over disputes at proprietary hospitals.[5] The Board distinguishes these cases; it says they were not merely proprietary hospitals. Central Dispensary & Emergency Hospital, though a proprietary hospital, is said to have been within the Board's plenary jurisdiction in the District of Columbia; General Electric Co., Kadlec Hospital and Kennecott Copper Corp. were hospitals which were integral parts of business establishments whose operations were inde-

2. 73 Stat. 541 (1959), 29 U.S.C. § 164 (Supp. II 1959–60), 29 U.S.C.A. § 164. Paragraph 2 of the same subsection provides:
"(2) Nothing in this Act shall be deemed to prevent or bar any agency or the courts of any State or Territory * * * from assuming and asserting jurisdiction over labor disputes over which the Board declines, pursuant to paragraph (1) of this subsection, to assert jurisdiction."
Under this provision a state agency may now assume jurisdiction which theretofore it could not, under the Supreme Court's decision in Guss v. Utah Labor Board, 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed. 2d 601.

3. 126 N.L.R.B. 144 (1960).

4. Although the Board in Flatbush General Hospital was satisfied that the employer had sufficient inflow of goods from out-of-state to meet the requirements for a finding of legal jurisdiction, the Board anticipated no substantial interference with commerce resulting from labor disputes. The Board found that of 1034 known proprietary hospitals, about 9 percent have more than 100 beds, and that 70 percent have under 50 beds. The conclusion that such hospitals are local in character was based on the facts that they service local residents and that their operations are subject to close regulation by the states for the protection of the health and safety of their residents. 126 N.L.R.B. at 145–46.

5. Hospital Hato Tejas, Inc., 111 N.L.R.B. 155 (1955); Kennecott Copper Corp., 99 N.L.R.B. 748 (1952); General Electric Co., Kadlec Hospital, 89 N.L.R.B. 1247 (1950); Central Dispensary & Emergency Hospital, 44 N.L.R.B. 533 (1942).

pendently within the Board's jurisdiction; while in Hospital Hato Tejas the hospital's operations had a vital relation to national defense. We do not decide whether these distinctions are well made, for even if each of the cases involved a proprietary hospital indistinguishable from the Sanitarium, the Board did not by assuming jurisdiction over them create a prevailing standard within the meaning of the proviso of section 14. We think the proviso contemplates a standard more definitely formulated than one said to arise by the assumption of jurisdiction in a few cases, as in the instances referred to.

We have considered the argument of the Sanitarium based on the statement of then Senator Kennedy on the Senate floor that section 14(c) (1) would not permit the Board to "reject cases over which it now assumes jurisdiction." [6] We think in the context of the legislative history as a whole, and of the statutory language to which the Senator referred, this statement was not intended as a declaration that the jurisdiction the Board must thereafter assert was frozen by each case which had previously been entertained. We think the Senator had reference to previous jurisdictional standards, not to every type of case over which jurisdiction had been asserted. Else section 14 wrought little change, and yet it was definitely intended to permit state agencies to assume greater responsibility should the federal agency decide to assume less. See footnote 2, supra.

Prior to August 1, 1959, the Board in fact had promulgated ten definite standards, set forth in an appendix to this opinion, under which it would assert jurisdiction. None applies to the Sanitarium unless the one denominated "Non-retail," which by its terms applies to non-retail enterprises with a $50,000 annual outflow or inflow. But the Board has not construed this standard to be all-inclusive of enterprises of non-retail character with a $50,000 annual outflow

or inflow. For us so to construe it now would be inconsistent with its purpose, and, indeed, would unduly restrict the area of Board discretion under section 14 in situations where the effect of a labor dispute on commerce is found by the Board to be insubstantial. Such a restriction upon the Board's discretion would defeat the legislative intent embodied in the 1959 amendments.

It is said that the Supreme Court decision in Hotel Employees Local 255 v. Leedom, 358 U.S. 99, 79 S.Ct. 150, 3 L. Ed.2d 143, rendered prior to August 1, 1959, created a definite standard having the effect of requiring the assertion of jurisdiction over the dispute at the Sanitarium. It was there held that the Board could not exclude from the remedial purposes of the Act any and every hotel. It is said to follow that the Board, prior to August 1, 1959, could not exclude any and every proprietary hospital. We need not emphasize that this fails to take account of the differences between hotels as a class and such hospitals as a class, involving consideration of the number and varying sizes of hotels with numerous ones which have a very close and very substantial relation to commerce, factors not apparent to any great degree with respect to proprietary hospitals. The point now, however, is that even if proprietary hospitals could not have been excluded as a class prior to August 1, 1959, this would have been because the Board had established no valid standard which would warrant their exclusion, not because all hotels could not then be excluded.

That the scope of the commerce power would encompass many such hospitals is not a standard within the meaning of the proviso, for the commerce power is a standard of permissible jurisdiction, not one for the mandatory assertion of jurisdiction.

We construe section 14 to permit the Board to withhold the exercise of jurisdiction for the reasons it has given with

6. 105 Cong.Rec. 17902 (1959); II Legislative History of the Labor-Management Reporting & Disclosure Act of 1959, 1435.

respect to proprietary hospitals unless prior to August 1, 1959, the Board had established a jurisdictional standard affirmatively including such institutions. The Board disclaims having done so, and for the reasons we have outlined we think its disclaimer is well founded. This leaves the present order of the Board a valid exercise of its authority under section 14.

■ A further thought may be added. The Board's declination of jurisdiction over proprietary hospitals is not irrevocable. The Board retains a discretion in the matter, to be exercised in the light of developments. The courts should not at this time, with so little experience growing out of the operation of section 14, seek to control that discretion in the circumstances presented by this case.

The order of the District Court is reversed and the case is remanded so that the complaint may be dismissed.

Reversed.

### Appendix.

The following is a compilation of the jurisdictional standards in effect on August 1, 1959, together with the Board decisions in which the particular standard was promulgated:

1. *Non-retail:* $50,000 outflow or inflow, direct or indirect. Siemons Mailing Service, 122 N.L.R.B. 81 (1958). Direct inflow refers to goods shipped or services furnished by the employer outside the State. Indirect outflow includes sales within the State to users meeting any standard except solely an indirect inflow or indirect outflow standard. Direct inflow refers to goods or services furnished directly to the employer from outside the State in which the employer is located. Indirect inflow refers to the purchase of goods or services which originated outside the employer's State but which he purchased from a seller within the State. Direct and indirect outflow may be combined and direct and indirect inflow may also be combined to meet the $50,000 requirement. However, outflow and inflow may not be combined.

2. *Office buildings:* Gross revenues of $100,000, of which $25,000 or more is derived from organizations which meet any of the standards, except the indirect outflow and indirect inflow standards established in the Siemons Mailing case. Mistletoe Operating Co., 122 N.L.R.B. 1534 (1959).

3. *Public utilities:* $250,000 gross volume of business, or $50,000 outflow or inflow, direct or indirect. Sioux Valley Empire Electric Ass'n, 122 N.L.R.B. 92 (1958).

4. *Newspapers and communication systems—radio, television, telegraph and telephone:* $100,000 gross volume of business. Raritan Valley Broadcasting Co., 122 N.L.R.B. · 90 (1958). Newspapers: $200,000 gross volume of business. Belleville Employing Printers, 122 N.L.R.B. 350 (1958).

5. *Retail:* $500,00 gross volume of business. Carolina Supplies & Cement Co., 122 N.L.R.B. 88 (1958).

6. *Hotels:* $50,000 gross revenues. Floridan Hotel of Tampa, Inc., 124 N.L.R.B. 261 (1959).

7. *Transportation enterprises, links, and channels of interstate commerce:* $50,000 gross revenues from furnishing interstate transportation services, or performing services valued at $50,000 or more for enterprises which meet any of the standards except the indirect outflow and indirect inflow standards established in the Siemons Mailing case. HPO Service, Inc., 122 N.L.R.B. 394 (1958).

8. *Transit systems:* $250,000 gross volume of business. Charleston Transit Co., 123 N.L.R.B. 1296 (1959).

9. *Taxicabs:* $500,000 gross volume of business, retail standard applies. Carolina Supplies & Cement Co., 122 N.L.R.B. 88, 89, n. 5 (1958).

10. *National Defense:* Board asserts jurisdiction over all enterprises, as to which it has statutory jurisdiction, whose operations have a substantial impact on national defense. Ready Mixed Concrete & Materials, Inc., 122 N.L.R.B. 318 (1958).