Max HIRSCH et al., Appellants,

v.

Frank W. McCULLOCH et al., Appellees.

Walter A. KELLEY, Appellant,

v.

Frank W. McCULLOCH et al., Appellees.

Nos. 16590, 16596.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 14, 1962.

Decided March 15, 1962.

Mr. John K. Carroll, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, for appellants in No. 16,590. Mr. Martin F. O'Donoghue, Washington, D. C., was on the brief for appellants in No. 16,590. Mr. Patrick C. O'Donoghue, Washington, D. C., also entered an appearance for appellants in No. 16,590.

Mr. Alfred Giardino, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, for appellant in No. 16,596. Messrs. Francis L. Casey, Jr., and Jeremiah C. Collins, Washington, D. C., also entered appearances for appellant in No. 16,596.

Mr. James C. Paras, Atty., N. L. R. B. with whom Messrs. Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Herman M. Levy, Atty., N. L. R. B., were on the brief, for appellees.

Before PHILLIPS, Senior Circuit Judge for the Tenth Circuit,[*] and DANAHER and BASTIAN, Circuit Judges.

## DANAHER, Circuit Judge.

Appellants, owners or trainers of thoroughbred race horses, are employers of grooms, exercise boys, "hot walkers" and other stable employees whom the Union [1] in New York seeks to represent. Such employees frequently and periodically move from state to state in their transportation and care of the horses which are engaged in horse-racing where licensed. The employers in the District Court charged that the Board had unlawfully declined without a hearing to assume jurisdiction over the business of raising, training and racing of such horses, despite the multi-state operations and notwithstanding that "a question of representation affecting commerce exists." [2] The Board, conceding that appellants' operations affect interstate commerce, nevertheless moved for summary judgment which was granted. The Board contended that it now is empowered, in its discretion, to decline to assert jurisdiction over any labor dispute involving any class or category of employers when it concludes that the effect on commerce of

such labor dispute is not so substantial as to warrant the Board's exercise of jurisdiction.

The issues, thus generally defined, bring us to consideration of the amendment [3] upon which the Board relies and which reads:

"[Sec. 14.] (c) (1) The Board, in its discretion, may, by rule of decision or by published rules adopted pursuant to the Administrative Procedure Act, decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction: *Provided*, That the Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction under the standards prevailing upon August 1, 1959.

"(2) Nothing in this Act shall be deemed to prevent or bar any agency or the courts of any State or Territory (including the Commonwealth of Puerto Rico, Guam, and the Virgin Islands), from assuming and asserting jurisdiction over labor disputes over which the Board declines, pursuant to paragraph (1) of this subsection, to assert jurisdiction."

The Board has made provision in its Rules, subpart H, for "Declaratory Orders and Advisory Opinions Regarding Board Jurisdiction." Section 102.98 authorizes the filing of a petition for such an advisory opinion by a party to a proceeding before an agency or court of any state or by any such state agency or court if there be doubt "whether the Board would assert jurisdiction on the basis of its current jurisdictional standards." The Board's determination as to

---

[*] Sitting by designation pursuant to 28 U.S.C. § 294(d).

[1]. Local 917 is an affiliate of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Inc.

2. § 9(c), 49 Stat. 453 (1935), as amended, 29 U.S.C.A. § 159(c), as amended, 29 U.S.C.A. § 159(c) (3).

3. § 701(a), 73 Stat. 541 (1959), 29 U.S.C.A. § 164(c).

whether it will or will not assert jurisdiction "shall be in the form of an advisory opinion." [4]

With the statute in mind, as above, and the Rule as summarized, we turn to the background of the instant case as shown on the present record.

The Board on March 3, 1961 rendered two advisory opinions, Meadow Stud, Inc., 130 N.L.R.B. 1202, and William H. Dixon, 130 N.L.R.B. 1204, advising the respective petitioners [5] of its declination of jurisdiction over the business of breeding, training and racing thoroughbred horses. The Board noted that it had *never decided* the jurisdictional question. It recognized that certain previous decisions [6] were not deemed "determinative" of the issue but said they pointed to the conclusions that horse racing operations are essentially local in character. The Board was of the opinion that it was vested with legal jurisdiction over the operations and that they are not entirely unrelated to commerce.

Nevertheless, as a matter of policy, the Board declined to act, thus leaving the states free to assert jurisdiction. Since the Board "had not established any standard for such enterprises prior to August 1, 1959, nothing in section 14(c) (1) of our Act prevents us from declining jurisdiction over public trainers," [7] it was concluded.

The Board in Dixon recited that the Union on November 3, 1960, had filed with the New York State Labor Relations Board a petition to be certified as the representative of the employer's grooms, observing that about 57 other petitions involving trainers and owners "are also pending." The Board considered the positions of Dixon and the Union as asserted in their statements, noting the Dixon assertion that only 3 states out of 15 where training and racing occur have general labor relations acts.

Among the petitions pending before the New York Board were those involving Galbreath, one of the appellants in our No. 16,590, and Kelley, appellant in No. 16,596. On April 4, 1961, Galbreath in Cincinnati, his principal place of business, and Kelley in New York, filed representation petitions as authorized by section 9(c) of the Act on N.L.R.B. Form 502. Galbreath showed that representation by a labor organization was sought as to his 71 grooms, exercise boys and "hot walkers"; Kelley showed 33 similar employees were involved. [8] All appellants trained, transported by van or plane and dealt in race horses, and raced them in meets in many states, at different seasons each year, it was made to appear. Additional references to their involvement in "commerce" need not here be developed.

On April 12, 1961, each of the various Regional Directors dismissed the petition before him which asked for "investigation and certification of representatives under Section 9(c)" of the Act. Each Director recited, in effect, that it would not effectuate the purposes of the Act to assert jurisdiction. Appellants respectively sought prompt review by the Board. [9] The Board by identical letters

---

4. 29 C.F.R. § 102.103 (Supp.1961).

5. In Meadow Stud, Inc., the Union, Local 917, was the petitioner; Dixon, the other petitioner, is a public horse trainer. The Union filed a response to the Dixon petition. Our appellants were not parties therein.

6. Hialeah Race Course, Inc., 125 N.L.R.B. 388; Jefferson Downs, Inc., 125 N.L.R.B. 386; Pinkerton's National Detective Agency, Inc., 114 N.L.R.B. 1363; Los Angeles Turf Club, Inc., 90 N.L.R.B. 20; Olympia Stadium Corporation, 85 N.L.R.B. 389. There was accordingly no controlling "rule of decision" attributable to such precedents.

7. 130 N.L.R.B. 1208.

8. As representative of all the petitions shown in our record, we mention only the Galbreath and Kelley petitions. Appellant Hirsch had 29 such employees; Dubassoff, 16, and Thomas J. Kelly, 12. All appellants, whether owners or public trainers, also showed the nature and scope of their operations.

9. See 29 C.F.R. § 101.18(b), (c) (Supp. 1961). Kelley, at least, asked that the Board set the matter for hearing.

dated June 7, 1961, advised the four appellants in No. 16,590 that "in view of the Board's decisions [*sic*] [10] in Meadow Stud, Inc., 130 NLRB No. 121 and William H. Dixon, 130 NLRB No. 122, it would not effectuate the policies of the Act to assert jurisdiction \* \* \*." None of the appellants was afforded a hearing by the Regional Director or by the Board.

Meanwhile, after the Board's Meadow Stud and Dixon advisory opinions of March 3, 1961, the New York State Labor Relations Board in Galbreath et ano, 24 S.L.R.B. No. 43 and in Matter of Walter A. Kelley, 24 S.L.R.B. No. 52, had considered the Union's petitions for an election among the stablehand employees of these two named appellants now before us. It took jurisdiction and directed an election. The State Board rejected the employer Kelley's contention that the appropriate unit should include all stable employees wherever located. The State Board determined that employees eligible to vote should be "all licensed employees in the appropriate unit who were employed by the Employer within the State of New York on any six (6) days during the 1961 racing season preceding the Direction [of Election] herein, and who are in the employ of the Employer on the date of election, including those temporarily absent from the State of New York on the date of the election \* \* \*."

Appellant Kelley in support of his motion for summary judgment in this case, now No. 16,596, pointed out to the District Court that he and his employees will find "as we travel from one state to another, our rights will become subject to the different rules of each jurisdiction only few of which have labor acts. The union will be free to burden and obstruct commerce by secondary boycotts and recognitional picketing and to press its present demand for a closed shop contract which it could not do under the federal law." The other appellants, in No. 16,590, additionally emphasized that their employees, irrespective of the state in which they are currently employed, would be considered by the Board to comprise an appropriate bargaining unit.[11] All appellants claim, in short, that they are entitled to the benefits of federal labor legislation.

Appellants argue that in addition to the rights of the employer with respect to certification as the question here arises, are those of the employees to organize and to select or reject a bargaining representative. At the same time the interest of the public and the importance of public rights underlying the purposes of the Act must be considered. To illustrate, in the year 1960, it was alleged, some 33,000,000 members of the public paid for mutuel participation more than $2,500,000,000 at more than a hundred race tracks in many states. The states collected revenue exceeding $250,000,000. Purses exceeding $85,000,000 were paid to horse owners or their trainers. The industry employed some 50,000 people at wages and salaries of some $200,000,000. If picket line problems and other interruptions due to labor difficulties shall occur in the delivery of feed to and the transportation of race horses from state to state, it would seem inevitable that all interests claiming protection of the Act might seriously be affected. Yet the Board has granted no hearing at any level. It has compiled no record. It has made no findings by which the courts may test its action in declining jurisdiction.

That such issues, coupled with all other facets of record, precipitate very real Board problems seems clear. "Appropriate for judgment is the fact that the immediate situation is representative of many others throughout the country, the total incidence of which if left

---

10. Although thus denominated "decisions," Meadow Stud and Dixon were merely "advisory opinions" and are so styled in the Board reports, which see. In contrast, see Hialeah Race Course, Inc., 125 N.L.R.B. 388 (1959), where the Board after full hearing entered its "Decision and Order," yet found it here inapropos as a "Rule of Decision."

11. The two cases were consolidated by order of the District Court. They have been separately briefed here.

unchecked may well become far-reaching in its harm to commerce." [12]

Equally clearly, Congress granted these employers a right [13] which the courts will protect,[14] unless the Act as amended by section 14(c) permits the Board to decline jurisdiction over representation disputes in an entire "class or category of employers." Certainly, except for section 14(c), "The Act says that the Board shall take jurisdiction of questions of representation affecting commerce. The verb 'shall' was incorporated into section 9(c) by the Taft-Hartley Act in place of 'may' in the older Wagner Act." [15] The Supreme Court pointed out that "dismissal of the representation petition on the sole ground of the Board's 'long standing policy not to exercise jurisdiction over the hotel industry' *as a class,* is contrary to the principles expressed in Office Employes v. Labor Board, 353 U.S. 313, 318–320 (1957)." [16] (Emphasis added.)

■ We turn accordingly to section 14(c) of the Act, text supra. Congress there said that the Board when properly declining jurisdiction might leave state agencies and state courts free to act. Congress told the Board it was not to refuse jurisdiction as to a situation "over which it would assert jurisdiction under the standards prevailing upon August 1, 1959." [17] Unless the Board prior to that date had established a jurisdictional standard affirmatively including the class or category here involved, it was free to withhold the exercise of its authority [18] in either of two ways as the section makes clear. It might decline jurisdiction over the class or category after rule-making pursuant to the Administrative Procedure Act— and it has published no such rules. Or, the Board might decline to act "by rule of decision." It did not do so.

The Board would have us accept the thinking set out in its "Decision and Order" in Hialeah Race Course, Inc.,[19] where the local employment of the grandstand and track employees presented the problem. We reject the Hialeah case as precedent for two reasons. First, the Board in its Meadow Stud, Inc. and William H. Dixon advisory opinions here found that Hialeah was not "determinative." Second, and more important, the Supreme Court has said that the Board's "exercise of discretion in the local field does not give the Board the power to decline jurisdiction over all employers in other fields. To do so would but grant to the Board the congressional power of

---

12. Polish Nat. Alliance of U. S. of North America v. National Labor Relations Board, 322 U.S. 643, 648, 64 S.Ct. 1196, 1199, 88 L.Ed. 1509 (1944); cf. National Labor Relations Board v. Denver Bldg. Council, 341 U.S. 675, 684, 71 S.Ct. 943, 95 L.Ed. 1284 (1951). The problems upon careful inquiry may seem to involve far more than the operations of a particular enterprise and to extend to the *nature* of possible labor disputes in that industry and their ultimate impact upon all affected interests.

13. § 9(c), supra note 2.

14. Leedom v. Kyne, 358 U.S. 184, 191, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958).

15. Hotel Employees Local No. 255 v. Leedom, 101 U.S.App.D.C. 414, 415, 249 F.2d 506, 507 (dissenting opinion), reversed, infra note 16.

16. Hotel Employees v. Leedom, 358 U.S. 99, 79 S.Ct. 150, 3 L.Ed.2d 143 (1958). In that case the Board had decided to exclude all questions of representation involving hotels.

17. Those standards are set forth in an appendix to Leedom v. Fitch Sanitarium, Inc., 111 U.S.App.D.C. 55, 59, 294 F. 2d 251, 255 (1961).

18. Id., 111 U.S.App.D.C. at 58–59, 294 F. 2d at 254–255. In Fitch, not only had there been a full hearing, but the Board affirmed its hearing officer's rulings and made findings. Moreover it relied upon a rule of decision announced, after hearing, in Flatbush General Hospital, 126 N.L. R.B. 144 (1960).

19. Supra note 10. In that case, after a full hearing, the local character of the operation was established. The findings clearly distinguish that case from the multi-state operations here involved. And see Leedom v. Fitch Sanitarium, Inc., supra note 17.

repeal." [20] The Board in any event would have us accept those two advisory opinions as "rules of decision." We decline to do so.

We are firmly of the view that Congress did not intend as to an entire class or category that states are to control conduct which is the subject of national regulation upon the mere *ipse dixit* of the Board.[21] We are persuaded rather that Congress intended that jurisdiction as to such class or category might be declined either (1) by rule-making as provided in sections 6 and 14(c) of the Act, or (2) as the result of hearings (which might culminate in a rule of decision, to be sure) but hearings as an essential of due process, nevertheless.[22]

The Board itself first formulated its jurisdictional standards to reflect "the results reached in the Board's past decisions disposing of similar jurisdictional issues." [23] "[The Board] has declined jurisdiction on an *ad hoc* basis over religious, educational, and eleemosynary employers such as a university library, a symphony orchestra, a research laboratory, and a church radio station,"[24] as Congress well knew. Section 9(c) (2) of the Act specified that the Board proceed to a representation determination by applying, whether at the instance of the employee petitioners or of the employer, "the same regulations and *rules of decision*." (Emphasis added.) Similar language was adopted in section 9(c) (4). Again, in 28 U.S.C. § 1652, Congress has given status to "rules of decision." [25]

■ If then there be a hearing, the rights of the appellants and other parties may be defined, and the determination shall become a decision with respect to the issues raised and considered and settled in that proceeding. The *ad hoc* rule so established by that decision under section 9(c) may in a later case satisfy the requirements of section 14(c) that jurisdiction as to a *class or category of employers* thereafter may be declined. Meanwhile, however, to meet the essentials of due process, there will have become available the findings and conclusions of the Board subject to judicial review.

Such were the background for and the context of the language chosen by Congress and inserted in section 14(c), by which the Board by rule of decision, "the process of litigating elucidation," [26]

**20.** Office Employes Intern. Union, Local No. 11 A.F.L.–C.I.O. v. National Labor Relations Board, 353 U.S. 313, 320, 77 S.Ct. 799, 803, 1 L.Ed.2d 846 (1957).

**21.** See San Diego Trades Council, Millers Union Local 2020 v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). At the very least, it may be argued, one criterion might involve whether or not "States have brought their labor laws into conformity with federal policy * * *." Guss v. Utah Labor Relations Board, 353 U.S. 1, 11, 77 S.Ct. 598, 1 L.Ed.2d 601 (1957). See generally, McCoid, No Man's Land, 44 Minn.L.Rev. 205, 237 et seq. (1959).

**22.** See Garner v. Teamsters Chauffeurs and Helpers Local Union No. 776, 346 U.S. 485, 490–491, 74 S.Ct. 161, 98 L.Ed. 228 (1953).

**23.** Hollow Tree Lumber Company, 91 N.L.R.B. 635, 636 (1950). "For a number of years, the Board decided case-by-case whether to take jurisdiction." Guss v. Utah Labor Relations Board, supra note 21, 353 U.S. at 3, 77 S.Ct. 598, 599, 1 L.Ed.2d 601, compare Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 222, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

**24.** Office Employes Intern. Union, Local No. 11 A.F.L.–C.I.O. v. National Labor Relations Board, supra note 20, 353 U.S. at 318, 77 S.Ct. 799, 802, 1 L.Ed.2d 846 (Footnote omitted.)

**25.** In Carroll v. Lessee of Carroll, (16 How.) 275, 286, 57 U.S. 275, 286, 14 L.Ed. 936 (1853), the Supreme Court pointed out the distinction between an "opinion" and a "decision." To constitute a decision, "there must have been an application of the judicial mind to the precise question necessary to be determined to fix the rights of the parties and decide to whom the property in contestation belongs."

**26.** International Ass'n of Machinists v. Gonzales, 356 U.S. 617, 619, 78 S.Ct. 923, 924, 2 L.Ed.2d 1018 (1958).

might decline to assert jurisdiction over any labor dispute involving any class or category of employers, when in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction. It is obvious the Board did not here so proceed,[27] and it may wish to reconsider its previous action.

Finding that the Board's reliance upon its advisory opinions falls short of that degree of compliance required by section 14(c), we reverse the order of the District Court and remand the case for further proceedings not inconsistent herewith.

27. Cf. N. L. R. B. v. Reliance Fuel Oil Corporation, 297 F.2d 94, 99 (2 Cir. 1961), certiorari granted 83 S.Ct. 1160.