NATIONAL MARITIME UNION OF AMERICA, AFL–CIO, Plaintiff,

v.

NATIONAL LABOR RELATIONS BOARD and Ivan C. McLeod, Regional Director of the Second Region of the National Labor Relations Board, Defendants.

No. 66 Civil 2289.

United States District Court
S. D. New York.

March 30, 1967.

Abraham E. Freedman, New York City, for plaintiff, Stanley B. Gruber, New York City, of counsel.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Solomon I. Hirsh, Bernard M. Dworski, Attys., National Labor Relations Board, Washington, D. C., and Sidney Danielson, Regional Atty., Second Region, New York City, Attorneys for defendants.

1. 29 U.S.C. § 141 et seq.

2. 29 U.S.C. § 159(c).

## OPINION

WEINFELD, District Judge.

This action was instituted by the plaintiff Union to set aside an order of the National Labor Relations Board dismissing the Union's petition for its certification and to compel the Board to conduct a representation election pursuant to provisions of the Labor Management Relations Act.[1] The Board moves to dismiss the complaint pursuant to Rule 12 (b) of the Federal Rules of Civil Procedure on the grounds that (1) the court is without jurisdiction over the subject matter of the action; and (2) the complaint fails to state a claim upon which relief can be granted. For the reasons hereafter discussed, the court dismisses the complaint on both grounds.

In October 1965 the Union filed a petition under section 9(c) of the Labor Management Relations Act of 1947[2] seeking certification as the representative of the clerical employees of the United Fruit Company at its terminal in the Panama Canal Zone. An evidentiary hearing was held, and after consideration of the briefs of the Union and the employer, the petition was dismissed. The principal issue was whether, under the Act, the Board's jurisdiction extended to the employees in question.[3] The hearing disclosed and the Board found that the United Fruit Company, the employer, is a New Jersey corporation, with its principal place of business in Boston, Massachusetts, and operates throughout the United States and various countries of Central and South America, where it is engaged, inter alia, in the business of providing transportation in interstate and foreign commerce. The Board further found that the employees the Union seeks to represent are Panamanian nationals; that they perform their work at United Fruit's shipping terminal in the Canal Zone; that United Fruit pays them wages in accordance with the Fair Labor Standards Act; that the employees reside outside the Zone, are forbidden to make

3. The employer also urged that the requested unit was inappropriate.

purchases in the Zone, are subject to the laws of the Republic of Panama, and pay taxes to Panama.

The employer's basic position before the Board was that it was without jurisdiction over its operations with respect to the employees in question, since the Canal Zone is not a state, foreign country or territory within the commerce definition of the Act.[4] The Union, on the other hand, contended that the Board had jurisdiction under the Act in view of the sovereignty over the Canal Zone granted to the United States under the treaty of 1903 between our government and the Republic of Panama.

The Board did not reach the jurisdictional issue. It dismissed the petition on the ground it deemed it inappropriate to assert jurisdiction. The bases of its decision were contemporaneous negotiations between the United States and Panama for a new treaty and the announcement by President Johnson that the two countries had already agreed that the 1903 treaty would be abrogated and that the new treaty would effectively recognize Panama's sovereignty over the area of the present Canal Zone.[5]

## SUBJECT MATTER JURISDICTION

Here the National Labor Relations Board has declined to process a representation petition filed by the Union under section 9(c). Ordinarily Board orders in such proceedings are not subject to direct review by the courts. Congress has provided an indirect and deliberately delayed review by the Courts of Appeals of representation orders by permitting challenge to them [6] whenever, based thereon, an unfair labor practice order has been issued under section 10(c) and its enforcement or review is sought under sections 10(e) or (f).[7] Congress, by so vesting jurisdiction in the Courts of Appeals to review representation orders, necessarily foreclosed District Court review. Nevertheless, the Supreme Court has held that the District Courts, under section 1337 of Title 28, have jurisdiction to set aside such orders in certain extraordinary circumstances.[8]

---

4. 29 U.S.C. § 152(6): "The term 'commerce' means trade, traffic, commerce, transportation, or communication among the several States, or between the District of Columbia or any Territory of the United States and any State or other Territory, or between any foreign country and any State, Territory, or the District of Columbia, or within the District of Columbia or any Territory, or between points in the same State but through any other State or any Territory or the District of Columbia or any foreign country."

5. Statement by the President on the Progress of Treaty Negotiations With Panama, LIII Dep't State Bull. 624 (1965).

6. 29 U.S.C. § 159(d): "Whenever an order of the Board made pursuant to section 160(c) of this title is based in whole or in part upon facts certified following an investigation pursuant to subsection (c) of this section and there is a petition for the enforcement or review of such order, such certification and the record of such investigation shall be included in the transcript of the entire record required to be filed" in the Court of Appeals.

7. Boire v. Greyhound Corp., 376 U.S. 473, 476–477, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964); American Federation of Labor v. NLRB, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940); Miami Newspaper Printing Pressmen's Union, etc., v. McCulloch, 116 U.S.App.D.C. 243, 322 F.2d 993, 994 (1963); Local 1545, United Bhd. of Carpenters, etc. v. Vincent, 286 F.2d 127, 129 (2d Cir. 1960).

8. The Union claims jurisdiction also under 29 U.S.C. § 159 and § 10 of the Administrative Procedure Act. § 159(d) and the sections to which it refers, 160(e) and (f), make clear on their faces that they are totally inapplicable. § 10 of the APA (now 5 U.S.C. § 701 et seq. (1966)) is likewise inapplicable. The purpose of this section "is to define the procedures and manner of judicial review of agency action, rather than to confer jurisdiction upon the courts." Ove Gustavsson Contracting Co. v. Floete, 278 F.2d 912, 914 (2d Cir.), cert. denied, 364 U.S. 894, 81 S.Ct. 225, 5 L.Ed.2d 188 (1960). Accord, Local 542, International Union of Operating Engineers, etc. v. NLRB, 328 F.2d 850, 854 (3d Cir.), cert. denied, 379 U.S. 826, 85 S.Ct. 52, 13 L.Ed. 2d 35 (1964); Kansas City Power & Light Co. v. McKay, 96 U.S.App.D.C. 273, 225 F.2d 924, 933, cert. denied 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. 780 (1955).

These exceptions to the normal rule precluding District Court intervention apply when the Board's order (1) violates a specific prohibition of the Act,[9] or (2) interferes with our government's foreign relations.[10] The Union contends that the Board's instant order comes within both exceptions.

First, it argues the Board improperly invaded the field of our foreign relations by predicating its dismissal upon the negotiations concerning the Zone and the President's statement with respect thereto. However, the Board's action is the converse of McCulloch v. Sociedad Nacional,[11] which created the exception based upon foreign affairs considerations and where the Supreme Court carefully limited its holding to Board orders which create urgent international problems.[12] Unlike McCulloch, there is no claim that the Board's declination of jurisdiction "aroused vigorous protests from foreign governments and created international problems for our Government,"[13] nor that the effect of the Board's action is that "an act of congress [will] * * * be construed to violate the law of nations * * *."[14] On the contrary, a statement of the Bureau of Public Affairs of the State Department concerning the negotiation of the new treaty for the Panama Canal and the President's announcement thereon notes that a basic conflict in interpretation of the sovereignty provision of the 1903 treaty has been the source of contention between our government and the Republic of Panama for more than sixty years, has become "a highly nationalistic, emotional issue in Panama" and was a factor contributing to the January 1964 demonstration in the Canal Zone and the break in relations between Panama and the United States.[15] The Board's declination of jurisdiction was calculated to avoid any action which might have been deemed an interference with international affairs and might have served to exacerbate the situation or disturb the progress of negotiations between the two governments. The Board's action, rather than "create international problems for our Government," sought to avoid them. Upon the facts, the McCulloch exception is inapplicable to the instant case.[16]

The Union next contends that this case falls within the Leedom v. Kyne exception.[17] There, the court held that the District Courts have jurisdiction "to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act."[18] The Union's position here is that the Kyne exception extends also to Board orders which decline to assert

9. Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958).

10. McCulloch v. Sociedad Nacional. 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963). Courts of Appeals have also held that the District Court may intervene when it is alleged the Board's order has deprived plaintiff of a constitutional right. Fay v. Douds, 172 F.2d 720 (2d Cir. 1949). See also Leedom v. International Bhd. of Elec. Workers, 107 U.S.App.D.C. 357, 278 F.2d 237 (1960).

11. 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963).

12. Id. at 17, 83 S.Ct. at 675.

13. Ibid.

14. Id. at 21, 83 S.Ct. at 678, quoting from The Charming Betsy, 2 Cranch 64, 118, 6 U.S. 64, 118, 2 L.Ed. 208 (1804).

15. Statement Concerning United States-Panama Relations and the Negotiation of a New Treaty for the Panama Canal, Office of Public Services, Bureau of Public Affairs, Department of State.

16. The broader interpretation of McCulloch contended for by the Union, that the District Courts have jurisdiction to review any Board order predicated in any way upon international considerations, is unacceptable. Under this view, the courts would have jurisdiction whenever the Board considers labor disputes having contacts with foreign nations. Both in the McCulloch case itself and in the subsequent case of Boire v. Greyhound Corp., 376 U.S. 473, 480, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964), the Supreme Court emphasized that the "interference with international affairs exception" is extremely narrow.

17. 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958).

18. Id. at 188, 79 S.Ct. at 184.

jurisdiction in the face of clear commands of the Act; that section 9(c) (1)[19] contains such a clear mandate; and that the Board's action here violated this command. This contention must be viewed against the Supreme Court's admonition that the *Kyne* exception is a "narrow" one and that *McCulloch* was "not to be taken as an enlargement of the exception in *Kyne*."[20] The latter case itself indicates a distinction between statutory prohibitions and affirmative commands.[21] The difficulty with extending the *Kyne* exception to purported commands is highlighted by Local 1545, United Bhd. of Carpenters, etc. v. Vincent,[22] where affirmative statutory language was held not sufficiently clear and specific to support District Court jurisdiction. As the *Carpenters* case shows, the meaning of affirmative statutory declarations can generally be discovered only through statutory interpretation, whereas the meaning of prohibitions, as in *Kyne,* is apparent on the face of the statute. Such is the problem in the instant case.[23]

Section 9(c) (1), relied upon by the Union, provides:

"Whenever a petition shall have been filed * * * the Board *shall* investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists *shall* provide for an appropriate hearing upon due notice. * * * If the Board finds upon the record of such hearing that such a question of representation exists, it *shall* direct an election by secret ballot and *shall* certify the results thereof."[24] [emphasis added.]

The Union contends that this provision is mandatory and that if a petition is presented and a question of representation affecting commerce exists, the Board is entirely without discretion but must direct an election. The Union's position disregards prior interpretations of and practice under 9(c) (1).

This statutory provision sets out the general steps to be followed in the processing of representation petitions: in-

---

19. 29 U.S.C. § 159(c) (1).

20. Boire v. Greyhound Corp., 376 U.S. 473, 480, 84 S.Ct. 894, 898, 11 L.Ed.2d 849 (1964). The Courts of Appeals have also narrowly confined the *Kyne* exception. Firestone Tire & Rubber Co. v. Samoff, 365 F.2d 625 (3d Cir. 1966); Boire v. Miami Herald Publishing Co., 343 F.2d 17 (5th Cir.), cert. denied, 382 U.S. 824, 86 S.Ct. 56, 15 L.Ed.2d 70 (1965); Machinery, Scrap Iron, Metal & Steel Chauffeurs, etc. v. Madden, 343 F.2d 497 (7th Cir.), cert. denied, 382 U.S. 822, 86 S.Ct. 53, 15 L.Ed.2d 69 (1965); Eastern Greyhound Lines v. Fusco, 323 F.2d 477 (6th Cir. 1963); Leedom v. Fitch Sanitarium, Inc., 111 U.S.App.D.C. 55, 294 F.2d 251 (1961); Local 1545, United Bhd. of Carpenters v. Vincent, 286 F.2d 127, 129 (2d Cir. 1960). But see Miami Newspaper Pressmen's Union, etc. v. McCulloch, 322 F.2d 993, 997 (1963).

21. 358 U.S. 184, 189, 79 S.Ct. 180, 184 (1958). Quoting from Texas & New Orleans R.R. v. Brotherhood of Railway & Steamship Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034 (1930), the court stated: "'While an affirmative declaration of duty contained in a legislative enactment may be of imperfect obliga-

tion because not enforceable in terms, a definite statutory prohibition of conduct * * * cannot be disregarded * * *.'"

22. 286 F.2d 127, 132 (2d Cir. 1960). See also Boire v. Miami Herald Publishing Co., 343 F.2d 17, 22–24 (5th Cir.), cert. denied, 382 U.S. 824, 86 S.Ct. 56, 15 L.Ed.2d 70 (1965).

23. No implication is intended that an affirmative command could never come within the *Kyne* exception, but only that many such "commands," as the one here, will not meet the requirements of clarity and specificity. See Note, 66 Columbia L.Rev. 1546, 1550–51 (1966): "[M]any of the act's provisions relevant to elections and certifications are couched in mandatory language. It is not surprising, therefore, that the courts have foundered in deciding which statutory commands are sufficiently clear—and which violations sufficiently plain—to warrant district court interference in the Board's processes." But see Miami Newspaper Pressmen's Union, etc. v. McCulloch, 116 U.S.App.D.C. 243, 322 F.2d 993, 997 (1963).

24. 29 U.S.C. § 159(c) (1).

vestigation; hearing; election; certification. Since the provision for each stage is preceded by the word "shall," accepting the Union's literal interpretation would mean that the section imposes upon the Board a series of mandatory steps which it must follow in processing representation petitions. Section 9(c) (1) has never been interpreted or applied in this manner; the Board has been permitted and has exercised considerable discretion in processing representation petitions.

For many years, for example, the Board has declined to assert jurisdiction in representation proceedings over disputes within its statutory jurisdiction because the business done by the employer is not sufficiently substantial within the Board's self-defined standards.[25] Prior to the 1959 amendment to the Act which codified the Board's practice,[26] it met with judicial acceptance.[27] Section 9(c) (1) read then as it reads now,[28] and no other provision in the Act authorized the Board to decline jurisdiction; yet the "shall" in the section was not deemed to preclude the Board's discretion in this respect.[29]

In 1959 the Act was amended by the addition of section 14(c) (1) which grants the Board power to decline jurisdiction over insubstantial disputes.[30] Although this section seems by its terms to apply to representation as well as unfair labor practice proceedings,[31] and has

25. McCarron Co., 100 N.L.R.B. 1537, 1539 n. 3 (1952); C. A. Braukman, 94 N.L.R.B. 1609. 1611 (1951). See also Siemons Mailing Service, 122 N.L.R.B. 81 (1958).

26. § 14(c) (1), 29 U.S.C. § 164(c) (1): "The Board, in its discretion, may * * * decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction: *Provided*, That the Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction under the standards prevailing upon August 1, 1959."

27. San Diego Bldg. Trades Council, etc. v. Garmon, 359 U.S. 236, 238, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); NLRB v. Guy F. Atkinson Co., 195 F.2d 141, 145–146 (9th Cir. 1952); Garmon v. San Diego Bldg. Trades Council, 45 Cal.2d 657, 291 P.2d 1, 5 (1955), rev'd on other grounds, 353 U.S. 26, 77 S.Ct. 607, 1 L. Ed.2d 618 (1957).

28. The language of § 9(c) (1) of the Act here in issue has not been altered since it was amended in 1947. See 61 Stat. 144 (1947).

29. With respect to the related question of the Board's power to decline jurisdiction in unfair labor practice proceedings, the courts generally did not question the Board's discretion. See NLRB v. W. B. Jones Lumber Co., 245 F.2d 388, 391 (9th Cir. 1957); NLRB v. Stoller, 207 F.2d 305, 307 (9th Cir. 1953), cert. denied, 347 U.S. 919, 74 S.Ct. 517, 98 L.

Ed. 1074 (1954); Haleston Drug Stores, Inc. v. NLRB, 187 F.2d 418, 420 (9th Cir. 1952); NLRB v. Newark Morning Ledger Co., 120 F.2d 262, 268, 137 A.L.R. 849 (3d Cir.), cert. denied, 314 U.S. 693, 62 S.Ct. 363, 86 L.Ed. 554 (1941); Agwilines, Inc. v. NLRB, 87 F.2d 146, 150–151 (5th Cir. 1936). Since the rights conferred on a union under § 9(c) are enforceable only by means of unfair labor practice proceedings, it would make little sense to hold that the Board has less discretionary power over representation proceedings than over unfair labor practice proceedings, regardless of any difference in the language between § 9(c) and § 10 of the Act.

30. See n. 26 supra. The problem to which § 14(c) (1) was addressed was the "no-man's land" created by the Supreme Court's holding in Guss v. Utah Labor Relations Bd., 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed.2d 601 (1957), that the states were pre-empted from regulating labor relations in the area of the Board's statutory but unexercised jurisdiction. See McCulloch v. Sociedad Nacional, 372 U.S. 10, 20 n. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963). The legislative history is concerned with this problem and sheds little light on the instant issue.

31. § 14(c) (1), 29 U.S.C. § 164(c) (1), permits the Board to decline jurisdiction over "any labor dispute." § 2(9), 29 U.S.C. § 152(9), defines "labor dispute" as "any controversy concerning * * * representation." See National Maritime Union, etc. v. NLRB, 342 F.2d 538, 541 (2d Cir.), cert. denied, 382 U.S. 835. 86 S.Ct. 78, 15 L.Ed.2d 78 (1965); New York Handkerchief Mfg. Co. v. NLRB,

been so applied by the Board [32] with apparent judicial approval,[33] it was not deemed necessary to amend section 9(c)(1) to reconcile what—if the Union's interpretation of the latter section is correct—would be a blatant inconsistency in the statutory scheme. The very existence of section 14(c)(1), in addition to the prior accepted practice of the Board, precludes a finding that section 9(c)(1) contains such a clear and specific command that the Board is without discretion, but must process every petition that is presented which alleges that a question of representation "affecting commerce" exists.

Moreover, additional administrative and judicial gloss has been superimposed upon the language the Union contends to be mandatory. The Board has for many years declined to assert jurisdiction over nonprofit organizations.[34] This practice was in effect prior to the enactment of section 14(c)(1), and in any event, this section does not provide authority for the Board declining jurisdiction in the nonprofit cases.[35] Nevertheless, this practice has met with at least implicit

judicial approval both before [36] and after [37] the enactment of section 14(c)(1).

Finally, as has been previously mentioned, each of the various steps prescribed by section 9(c)(1) for the processing of a representation petition is framed in a "shall" clause. However, as this section is interpreted and applied, the Board may, for any of several reasons, none of which is expressly authorized by the Act, decline to process a representation petition. For example, although a petition is filed in accordance with the section and the Board has jurisdiction, it may decline to proceed to an investigation or certification if the employees sought to be represented are already covered by a valid subsisting collective bargaining agreement.[38] Although Congress took note of this "contract-bar" rule when it amended the Act in 1947,[39] the Union's literal reading of 9(c)(1) would, as one court pointed out, outlaw the contract-bar rule.[40] Yet it has not been seriously argued that the word "shall" in section 9(c)(1) invalidates the rule. Several other examples can be cited of Board discretion notwith-

---

114 F.2d 144, 148 (7th Cir.), cert. denied, 311 U.S. 704, 61 S.Ct. 170, 85 L.Ed. 457 (1940).

32. E. g., Flatbush General Hospital, 126 N.L.R.B. 144 (1960). See also Athens T.V. Cable Inc. v. Communications Workers, 160 N.L.R.B. 92 (1966).

33. See Leedom v. Fitch Sanitarium, Inc., 111 U.S.App.D.C. 55, 294 F.2d 251 (1961). See also Pennsylvania Labor Relations Bd. v. Butz, 411 Pa. 360, 192 A. 2d 707, 712–714 (1963); Cox, The Landrum-Griffin Amendments to the NLRA, 44 Minn.L.Rev. 257, 262 (1959).

34. Leland Stanford Junior University, 152 N.L.R.B. 704 (1965); Massachusetts Institute of Technology, 152 N.L.R.B. 598 (1965); Crotty Bros., N.Y. Inc., 146 N.L. R.B. 755 (1964); Armour Research Foundation, 107 N.L.R.B. 1052 (1954); Trustees of Columbia University, 97 N.L. R.B. 424 (1951); Philadelphia Orchestra Ass'n, 97 N.L.R.B. 548 (1951).

35. See, e.g., Trustees of Columbia University, 97 N.L.R.B. 424, 425 (1951), where

the Board expressly found that the employer's effect on commerce satisfied both the statutory and discretionary jurisdictional standards but nevertheless declined to assert jurisdiction.

36. Office Emp. Intern. Union, etc., v. NLRB, 353 U.S. 313, 318–319, 77 S.Ct. 799, 1 L.Ed.2d 846 (1957).

37. NLRB v. Chain Serv. Restaurant, Luncheonette & Soda Fountain Employees, 302 F.2d 167, 173 (2d Cir. 1962).

38. See Seventh Annual Report of the National Labor Relations Board (1942), quoted in Local 1545, United Bhd. of Carpenters, etc., v. Vincent, 286 F.2d 127, 130 (2d Cir. 1960).

39. See n. 40 infra.

40. The court rejected the possibility that 9(c)(1) invalidated the contract-bar rule. Local 1545, United Bhd. of Carpenters, etc. v. Vincent, 286 F.2d 127, 131, n. 4 (2d Cir. 1960).

standing the language of the section here relied upon by the Union.[41]

Here, as in Local 1545, United Bhd. of Carpenters, etc. v. Vincent:

"If [petitioner] * * * is to prevail, it must therefore be on the basis that Leedom v. Kyne cannot rationally be restricted to the case of flouting a clear statutory command but must be taken to recognize jurisdiction of the District Court to enjoin representation orders whenever there is a colorable allegation that the Board has misread the declared will of Congress and the remedy afforded by § 9(d) is likely to prove inadequate * * *."[42]

There, the Court of Appeals rejected this theory; the possibility of an absence of remedy was not deemed sufficient reason to uphold District Court jurisdiction.[43] Nothing in the instant case warrants a departure from the rule of the *Carpenters* case. Section 9(c) (1) is by no means so clear and specific that when the Board declines to assert its authority it is acting in defiance of an express statutory command, thereby vesting this court with jurisdiction to review its action. Accordingly, upon the facts here presented, the court concludes it is without subject matter jurisdiction.

## THE BOARD'S ORDER

■ Even if the court found it has jurisdiction over this suit, the complaint fails to state a claim warranting relief. It has been shown that under section 9(c) (1), as interpreted and applied, the Board has had discretion in deciding whether to process a representation petition. On the particular facts of the instant case, the Board acted within its

41. *First:* If, after an election petition is filed, a union can show that the employer has no good faith doubt that the union in fact represents a majority of his employees, the Board will find the employer guilty of a § 8(a) (5), 29 U.S.C. § 158 (a) (5), refusal to bargain in good faith, and order it to bargain with the union. Thus, despite section 9(c) (1), a union may "organize" a company within the Board's jurisdiction and as to which election proceedings were commenced without ever having won an election. See NLRB v. Gotham Shoe Mfg. Co., 359 F.2d 684, 686 (2d Cir. 1966), which cites all the relevant cases. The "mandatory" language of § 9(c) (1) does not grant the employer an absolute right to an election. See NLRB v. Gotham Shoe Mfg. Co., supra; NLRB v. Nelson Mfg. Co., 326 F. 2d 397, 399–400 (6th Cir. 1964); NLRB v. Decker, 296 F.2d 338, 341 (8th Cir. 1961). See generally, Union Authorization Cards, 75 Yale L.J. 805 (1966). *Second:* Without express statutory authorization, see Surprenant Mfg. Co. v. Alpert, 318 F.2d 396, 397 (1st Cir. 1963), it has been for years the Board's policy to refuse to proceed with an election where one would otherwise be held while substantial unfair labor practice charges are pending. This practice has been approved by the courts. Furr's Inc. v. NLRB, 350 F.2d 84, 85–86 (10th Cir. 1965); Surprenant Mfg. Co. v. Alpert, supra. *Third:* Notwithstanding the language that "the Board shall investigate such petition" in 9(c) (1), 29 U.S.C. § 159(c) (1), the Board may decline to investigate absent a showing that a substantial number of employees, defined by Board Regulation, 29 C.F.R. § 101.27, as thirty per cent, wish to be represented. Since it has been held that actual proof of substantial employee interest is not prerequisite to the Board's jurisdiction, NLRB v. National Truck Rental Co., 99 U.S. App.D.C. 259, 239 F.2d 422, 424–425 (1956), cert. denied, 352 U.S. 1016, 77 S.Ct. 561, 1 L.Ed.2d 547 (1957); NLRB v. J. I. Case Co., 201 F.2d 597, 598–600 (9th Cir. 1953), this procedure, too, may result in the Board declining to "assert jurisdiction," in the sense of denying access to its facilities, when it has such jurisdiction.

42. 286 F.2d 127, 132 (2d Cir. 1960). See also Eastern Greyhound Lines v. Fusco, 323 F.2d 477 (6th Cir. 1963); Consolidated Edison Co. of N.Y. v. McLeod, 302 F.2d 354, 355 (2d Cir. 1962), both holding the District Court lacked jurisdiction where the most shown is that the Board's action is arbitrary, unreasonable and unsupported by the evidence; Surprenant Mfg. Co. v. Alpert, 318 F.2d 396, 399 (1st Cir. 1963) (abuse of discretion by Board will not support District Court jurisdiction under *Kyne*.)

43. 286 F.2d 127, 133 (2d Cir. 1960).

discretion and was not arbitrary or capricious.[44]

The Board's refusal to consider whether it had jurisdiction was manifestly based upon a combination of prudential considerations. An official pronouncement by the President of the United States stated that our government and the Republic of Panama had already agreed that upon the abrogation of the 1903 treaty, the new treaty would effectively recognize Panama's sovereignty over the present Canal Zone.[45] The resolution of this issue offered the prospect that the Board, even if it presently has jurisdiction of the employer's employees working in the Zone, would no longer have jurisdiction once the treaty was effectuated. Under this circumstance, the Board's action was not unreasonable.

When the probable happening of a future event is likely to settle definitively an issue before the Board, it is not unreasonable for the Board to defer its determination until after the event or until it appears reasonably likely that the event will not occur. Thus, for example, when the Board's General Counsel withheld final determination on the issuance of an unfair labor practice complaint pending the outcome of litigation in a state court on the ground that this litigation could affect the unfair labor practice charge, he did not abuse his discretion.[46] The Union, however, strongly presses that the process of treaty negotiation is slow and cumbersome, may extend over a considerable period; that accord may never be reached and, even so, that Senate ratification may not be forthcoming. These conjectural possibilities must yield to the fact that the government does not operate in a vacuum. The Board is not required to disregard a statement by the President that the United States and Panama *are already agreed* that: "The 1903 Treaty will be abrogated. The new treaty will effectively recognize Panama's sovereignty over the area of the present Canal Zone." [47] On the basis of this statement, recited in the Board's Decision and Order, the Board could reasonably defer deciding whether it had jurisdiction over the Panamanian nationals employed at United Fruit's operations in the Panama Canal Zone, an area where the Board has

---

44. The cases of Office Employes International Union v. NLRB, 353 U.S. 313, 77 S.Ct. 799, 1 L.Ed.2d 846 (1957) and Hotel Employees Local No. 255, etc. v. Leedom, 358 U.S. 99, 79 S.Ct. 150, 3 L.Ed. 2d 143 (1958) are not to the contrary. In both of these cases, the Board had refused to exercise its jurisdiction on an industry wide basis. See NLRB v. Pease Oil Co., 279 F.2d 135, 138 (2d Cir. 1960). In the *Office Employes* case, the Board's rationale for refusing to assert jurisdiction over labor unions when acting as employers was that they were within the nonprofit organization category. In this circumstance, the Supreme Court held that since the reason for the nonprofit organization exclusion "has no applicability to union activity such as that found here," and further, since the Board's action was contrary to the intent of Congress, the Board's order was arbitrary and beyond its power. 353 U.S. at 319–320, 77 S.Ct. at 803. In the *Hotel Employees* case, the Board's ground for declining jurisdiction, its "long standing policy not to exercise jurisdiction over the hotel industry," was equally unreasonable, and was therefore held to be arbitrary. In the instant case, on the other hand, sound reasons support the Board's action.

45. Statement by the President, supra, n. 5.

46. Division 1267, Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees, etc. v. Ordman, 116 U.S.App. D.C. 7, 320 F.2d 729 (1963). Cf. NLRB v. Pool Mfg. Co., 339 U.S. 577, 70 S.Ct. 830, 94 L.Ed. 1077 (1950) (under the circumstances, a two and one-half year delay between issuance of unfair labor practice order and petition for enforcement was permissible); NLRB v. Superior Fireproof Door & Sash Co., 289 F.2d 713, 723 (2d Cir. 1961) (implying that a Board delay in deciding an unfair labor practice case is permissible if supported by a reasonable explanation).

47. Statement by the President, supra, n. 5.

**126**

no office and no facilities for supervising labor-management relations.[48] The Board's order is no more than a deferment; should international conditions change or the treaty negotiations reach an impasse, the Board may well reconsider its position.[49]

█ Further, the opinion of the Supreme Court in McCulloch v. Sociedad Nacional[50] makes it perfectly clear that considerations of international relations are highly relevant—indeed, indispensable—in determining the extent of the Board's jurisdiction.[51] This court perceives no reason why such considerations are not equally relevant to the Board's determination whether to assert jurisdiction.[52] On the basis of the recent status of United States-Panamanian relations and the President's statement regarding current negotiations, it was not unreasonble for the Board to conclude that its assertion of jurisdiction over these Panamanian nationals working in the Canal Zone during the negotiations could well have an undesirable impact.

The complaint is dismissed.

---

48. The United Fruit Company's brief submitted to the Board emphasized that for the more than thirty years of the Board's existence it had never processed a petition with respect to Canal Zone employees, never maintained offices there, had no agents or employees there, and never mentioned the Zone in any rule or regulation. Thus, severe administrative problems might have been encountered had it acted upon the plaintiff's petition. While these matters are not referred to in the Board's decision, they are circumstances relating to its internal organization which it might well have taken into account.

49. See Leedom v. Fitch Sanitarium, Inc., 111 U.S.App.D.C. 55, 294 F.2d 251, 255 (1961): "The Board's declination of jurisdiction * * * is not irrevocable. The Board retains a discretion in the matter, to be exercised in the light of developments." And see n. 46, supra.

50. 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963).

51. Id. at 20–22, 83 S.Ct. at 677–678.

52. The Board should not be and is not required to blind itself to national policies and problems not within the category of labor relations. Thus, for example, in determining whether to assert jurisdiction it may take account of the fact that the employer's business is involved in the National Defense program. NLRB v. Stoller, 207 F.2d 305, 307 n. 4 (9th Cir. 1953), cert. denied, 347 U.S. 919, 74 S.Ct. 517, 98 L.Ed. 1074 (1954). That the Board is not precluded from considering national policies unrelated to labor relations is pointedly demonstrated by Southern S.S. Co. v. NLRB, 316 U.S. 31, 47, 62 S.Ct. 886, 894, 86 L.Ed. 1246 (1942), where the Supreme Court stated: "[T]he Board has not been commissioned to effectuate the policies of the Labor Relations Act so single-mindedly that it may wholly ignore other and equally important Congressional objectives."